# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2779

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Western |
| | * | District of Missouri. |
| Cynthia J. DeWitt, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  December 16, 2003
Filed:  April 28, 2004

_____

Before MELLOY, BEAM, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Cynthia J. DeWitt appeals the sentence imposed following her guilty plea to possessing a listed chemical, knowing or having reasonable cause to believe that it would be used to manufacture methamphetamine, in violation of 21 U.S.C. § 841(c)(2).  DeWitt argues that she is entitled to resentencing, because the government breached a provision of the plea agreement between the parties.  We reverse and remand for resentencing.

## I.

DeWitt was charged by a grand jury in the first count of a two-count indictment. Count I charged that on February 4, 2002, DeWitt possessed pseudoephedrine, knowing or having reasonable cause to believe that it would be used to manufacture methamphetamine. Count II charged co-defendant Robert D. Hall with committing the same offense on or about September 17, 2001.

The government and DeWitt entered into a plea agreement. Paragraph 11 of the agreement provides:

11. With respect to the application of the sentencing guidelines to this case, the parties agree as follows:

a. The applicable guideline section for this offense is 2D1.11. The amount of pseudoephedrine to be used to calculate the sentencing guidelines is 1.12 grams. The following Drug Computation chart explains the drug conversion amounts:

### DRUG COMPUTATION CHART

| DATE OF SALE/POSSESSION | DRUG | QUANTITY |
|---|---|---|
| February 4, 2002 | Pseudoephedrine | 1.12 grams |
| | | TOTAL: 1.12 grams |

Paragraph 11(b) of the plea agreement states that "[t]he base offense level is 16." Paragraph 12 states in part that "[t]he parties may advocate any position at the sentencing hearing regarding any sentencing issues not addressed in this agreement."

The plea agreement was accepted by the district court at a change of plea hearing on November 13, 2002. At the hearing, the government advised the court that the plea agreement "talks about the guideline calculations that we have made in paragraph 11(a), stating that the amount of pseudoephedrine that we believe was applicable is 1.12 grams. We have calculated her base offense level at 16 . . . ." DeWitt and her counsel told the court that they agreed with the prosecution's summary of the agreement.

The United States Probation Office prepared a presentence report and submitted it to the district court. For purposes of determining a base offense level pursuant to USSG § 2D1.11, the presentence report attributed to DeWitt the 1.12 grams of pseudoephedrine from the February 2002 offense, as well as an additional 51.9 grams of pseudoephedrine related to the September 2001 offense charged against co-defendant Hall in Count II. The probation office found that DeWitt's "relevant conduct" made her accountable for 53.02 grams of pseudoephedrine, *see* USSG § 1B1.3(a)(2), and recommended a base offense level of 28. DeWitt objected to the drug quantity and base offense level set forth in the presentence report.

At the sentencing hearing, the government sought to introduce testimony and documentary evidence relating to the September 2001 incident to establish the drug quantity set forth in the presentence report. DeWitt objected, claiming that the government had agreed to a base offense level of 16 and a drug quantity of 1.12 grams. The government argued that the plea agreement permitted the prosecution to present evidence of any conduct charged in any count of the indictment as "relevant conduct" under the guidelines. The district court allowed the government to present evidence relating to the September 2001 incident, subject to DeWitt's continuing objection.

After presenting the evidence, the government's attorney stated, "I understand that the parties had an understanding of what they believed the amount would be, and

that's listed further in the plea agreement, but that amount does not prevent any party from presenting additional information. And that's what the government has done today." The district court observed that the plea agreement provided that the court was not bound by the agreements of the parties, and that the court was free to consider relevant conduct. The court ruled that it would "allow the testimony and consider [the evidence] as relevant conduct [ ]regardless of what the plea agreement says, because I think it is appropriate."

The district court found DeWitt accountable for the quantity recommended in the presentence report, and adopted the report's recommended base offense level of 28. The court reduced the offense level by a total of seven levels for DeWitt's mitigating role in the offense and acceptance of responsibility, and arrived at a total offense level of 21. With a criminal history category II, DeWitt's sentencing range was 41-51 months imprisonment. The court sentenced DeWitt to 41 months imprisonment, followed by a three-year term of supervised release.

## II.

Issues concerning the interpretation and enforcement of a plea agreement are reviewed de novo. *United States v. Austin*, 255 F.3d 593, 596 (8th Cir. 2001). Plea agreements are contractual in nature, and should be interpreted according to general contract principles. *Margalli-Olvera v. INS*, 43 F.3d 345, 351 (8th Cir. 1994). "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971).

As we construe DeWitt's plea agreement, the parties stipulated that the drug quantity applicable to her case was 1.12 grams of pseudoephedrine, and that the applicable base offense level was 16. On its own initiative, the government then sought to present evidence that the drug quantity and corresponding base offense

level should be higher.  We conclude that the government's conduct constituted a breach of the plea agreement.

The government argues that there was no breach because certain provisions in the plea agreement entitled the government to offer evidence of "relevant conduct," which would include uncharged conduct of DeWitt.  More specifically, the government contends that the drug quantity and base offense level stipulations bound the government only with respect to Count I of the indictment.  On this view, the government was not precluded from presenting evidence at sentencing to show that the drug quantities relating to Count II -- the September 2001 incident involving DeWitt's co-defendant -- should be attributed to DeWitt.

We reject this interpretation of the agreement.  Paragraph 11 of the plea agreement defines "the application of the sentencing guidelines *to this case*," not merely to Count I.  The drug computation chart in that paragraph refers not merely to a "drug quantity," but to the "*total*" drug quantity.  The chart also identifies the "applicable guideline section for this offense," and provides that "the amount of pseudoephedrine *to be used to calculate the sentencing guidelines* is 1.12 grams." Nothing in paragraph 11 suggests that the computation established only a partial drug quantity.  The plain language of these provisions demonstrates that the parties agreed to a total drug quantity attributable to DeWitt for this case.

It is true that paragraph 3 of the plea agreement says that "uncharged related criminal activity may be considered as 'relevant conduct' pursuant to USSG § 1B1.3(a)(2) in calculating the offense level for the charge to which defendant will plead guilty."  We do not agree, however, that this general provision permits the government to advocate a drug quantity higher than the total quantity to which it had specifically agreed in another section of the plea agreement.  Under ordinary rules of contract interpretation, we give effect to the specific drug quantity and base offense level stipulations of paragraph 11 over the plea agreement's more general provisions

relating to "relevant conduct." *United States v. Rivera*, 357 F.3d 290, 295 (3d Cir. 2004) (quoting 5 Corbin on Contracts § 24.23 (rev. ed. 1998)) ("If the apparent inconsistency is between a clause that is general and broadly inclusive in nature and one that is more limited and specific in its coverage, the more specific term should . . . be held to prevail over the more general term"). If we accepted the government's interpretation of the "relevant conduct" provision, then it would render meaningless the stipulation of the parties concerning DeWitt's "total" drug quantity "to be used to calculate the sentencing guidelines" for "this case." Of course, parties may reach a stipulation with respect to one aspect of a sentencing proceeding (such as the quantity attributable to a particular transaction), while leaving open other issues for litigation at a sentencing hearing (such as quantity attributable based on other relevant conduct), but the agreement in this case did not accomplish that objective.

The government also argues for the first time on appeal that paragraph 10 of the plea agreement permitted it to offer evidence in support of the higher base offense level. Paragraph 10 says the government is allowed to "respond to comments made or positions taken by the defendant or defendant's counsel and to correct any misstatements or inaccuracies." The government argues that because DeWitt objected to portions of the presentence report attributing to her the additional 51.9 grams of pseudoephedrine, the government was entitled to present evidence to rebut her objecting comments.

We do not believe that paragraph 10 can bear the weight the government assigns to it. The presentence report, of course, is not evidence. Once DeWitt objected to the recommended drug quantity, the court could not assess that quantity against her unless evidence was presented to prove her liability, and the government was not free under this agreement to initiate the presentation of such evidence. We do not believe paragraph 10 means that if DeWitt objected to a portion of the draft presentence report that was inconsistent with the stipulation of the parties, then the government was free to present evidence inconsistent with the stipulation. That

-6-

reading would preclude DeWitt from seeking to implement the agreement of the parties. In the context of the overall agreement, we interpret paragraph 10 to provide the government with flexibility to respond to evidence or comments that the defendant might present to influence the district court's determination of an issue on which the parties had not reached a stipulation, or an issue as to which the district court requested a presentation of evidence or argument despite a stipulation. But we do not believe the agreement is reasonably construed to mean that an objection designed to adhere to the stipulations opens the door for the government to avoid the stipulations.

Our holding concerns only the restrictions on the government under the terms of DeWitt's plea agreement. Because the plea agreement in this case was not governed by Federal Rule of Criminal Procedure 11(c)(1)(C), the district court correctly observed that it was not bound by the drug quantity or base offense level agreed to by the parties. Indeed, the sentencing guidelines require the district court independently to evaluate the evidence when imposing a sentence. *See* USSG § 6B1.4 ("The court is not bound by the stipulation, but may with the aid of the presentence report, determine the facts relevant to sentencing."); *id.*, comment. ("[T]he court is not obliged to accept the stipulation of the parties. . . . Rather, in determining the factual basis for the sentence, the court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information.").

If recommendations in a presentence report differ from stipulations in a plea agreement, and the court is concerned about the accuracy of the stipulations, then the court may investigate and even call witnesses in order to make findings under the sentencing guidelines. *See* Fed. R. Evid. 614; *United States v. Garcia*, 78 F.3d 1457, 1462-63 (10th Cir. 1996) (calling of witnesses proper because judge was obliged to consider whether stipulation accurately reflected all conduct relevant to proper sentence); *United States v. Johnson*, 132 F.3d 628, 631 (11th Cir. 1998) ("On remand,

the sentencing court can make its own determinations as to the most appropriate sentence -- being bound by neither the plea agreement nor the PSI.").  As DeWitt's counsel acknowledged at oral argument, there would have been no breach of the plea agreement if the district court had *directed* the government to present evidence that contradicted the stipulation.  *Cf. United States v. Has No Horses*, 261 F.3d 744, 750 (8th Cir. 2001); *Johnson*, 132 F.3d at 630-31.  But the fact that the district court in this case may well have arrived at the same result on its own initiative does not ameliorate the government's breach.  *United States v. McCray*, 849 F.2d 304, 305 (8th Cir. 1988); *Rivera*, 357 F.3d at 295 n.6.  Where the government stipulates to a drug quantity and a base offense level, it may not then initiate an effort at the sentencing hearing to obtain a greater sentence, even if the government has come to believe that the stipulation was made in error.

\*      \*      \*

Because we conclude that the government breached the plea agreement, our precedent dictates that we vacate the judgment and remand to the district court for resentencing before a different judge.  *Brunelle v. United States*, 864 F.2d 64, 65 (8th Cir. 1988) (per curiam); *United States v. McCray*, 849 F.2d 304, 306 (8th Cir. 1988) (per curiam).  The reassignment, of course, "is in no sense to question the fairness of the sentencing judge."  *Santobello*, 404 U.S. at 263.

———————————————