# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1192

_____

United States of America,　　　　　　　*
　　　　　　　　　　　　　　　　　　　*
　　　　　　　Appellee,　　　　　　　　*　Appeal from the United States
　　　　　　　　　　　　　　　　　　　*　District Court for the
　　　v.　　　　　　　　　　　　　　　*　Western District of Missouri.
　　　　　　　　　　　　　　　　　　　*
Paul Allen Cook,　　　　　　　　　　　*　　　　[UNPUBLISHED]
　　　　　　　　　　　　　　　　　　　*
　　　　　　　Appellant.　　　　　　　　*

_____

Submitted: October 15, 2007
Filed: October 25, 2007

_____

Before BYE, BOWMAN, and SMITH, Circuit Judges.

_____

PER CURIAM.

Paul Allen Cook entered into a written agreement with the government to plead guilty to possession with intent to distribute marijuana. See 21 U.S.C. § 841(a)(1). In return for Cook's guilty plea, the government dismissed the remaining charges against him. The District Court[1] sentenced Cook to fifty-seven months of imprisonment. Cook appeals, arguing that the government breached the plea agreement by advocating for a drug quantity greater than the quantity to which he and the government stipulated in the plea agreement. We dismiss.

_____

[1]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

We first address the government's argument that because the plea agreement included a provision requiring Cook to waive the right to appeal his sentence, we must dismiss this appeal. Where a defendant's appeal falls within the scope of an appeal waiver, where both the plea agreement and the waiver were entered into knowingly and voluntarily, and where no miscarriage of justice or illegal sentence would result from the enforcement of the plea agreement, we will enforce the agreement and dismiss the defendant's appeal. See United States v. Andis, 333 F. 3d 886, 889–92 (8th Cir. 2003) (en banc).

Cook agreed to waive "his right to appeal his sentence . . . on any ground except a sentence imposed in excess of the statutory maximum or an illegal sentence, that is, sentencing error more serious than misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence." Plea Agreement at 11. Cook does not dispute that he entered into the plea agreement knowingly and voluntarily. And despite his arguments to the contrary, Cook's sentence is not illegal. See Andis, 333 F.3d at 892 ("[A] sentence is illegal when it is not authorized by law; for example, when the sentence is in excess of a statutory provision or otherwise contrary to the applicable statute." (citations and quotations omitted)). We conclude that the plea agreement—including the provision requiring that Cook waive his right to appeal—is valid and enforceable and that Cook's appeal should be dismissed.

Even if we considered the merits of Cook's argument on appeal, namely, that a miscarriage of justice occurred because the government breached the plea agreement, we would affirm the sentence imposed by the District Court. As we noted in Andis a miscarriage of justice, although never exhaustively defined by our court, has been interpreted to include a sentence in excess of the applicable statutory maximum, a sentence based on constitutionally impermissible factors, a sentence imposed without effective assistance of counsel, and a sentence in violation of the terms of a plea agreement. Id. at 891. We review issues pertaining to the interpretation and enforcement of a plea agreement de novo. United States v. Has No

Horses, 261 F.3d 744, 750 (8th Cir. 2001), cert. denied, 534 U.S. 1150 (2002). "Plea agreements are contractual in nature, and should be interpreted according to general contract principles." United States v. DeWitt, 366 F.3d 667, 669 (8th Cir. 2004). In order to satisfy due process, the government must fulfill any promise it makes in a plea agreement that constitutes a significant element of the defendant's consideration or inducement for entering into the agreement. Santobello v. New York, 404 U.S. 257, 262 (1971).

In this case, the plea agreement began with a statement of facts establishing that Cook and other individuals had been conducting marijuana-distribution operations out of Cook's Sturgeon, Missouri, residence. The amount of marijuana distributed from Cook's home was described by one witness as "large" and "in excess of 100 pounds [approximately 45 kilograms] . . . on several occasions." Plea Agreement at 2. When law-enforcement officers executed a search warrant at Cook's residence, they recovered "scales, drug paraphernalia, [and] approximately 40 pounds [roughly 18 kilograms] of marijuana." Id. at 3. The plea agreement did not contain an express stipulation to the total drug quantity for which Cook would be held responsible. It did, however, specify that the applicable United States Sentencing Guidelines section for Cook's offense of conviction was "U.S.S.G. § 2D1.1, which provides for a base offense level of at least 20, but could be as high as 28." Id. at 7.

At the plea hearing, the government recited the facts as stated in the plea agreement and offered to provide testimony of the two witnesses identified in the agreement in order to prove the total drug quantity attributable to Cook. The government stated that one of its witnesses would testify that "close[] to a thousand pounds" (or about 454 kilograms) of marijuana had been stored at Cook's residence. Tr. of Hr'g on Change of Plea at 13. Another witness would testify that "at least 120" additional pounds (or about 54 kilograms) of marijuana had been stored at Cook's residence. Id. Cook objected to the government's statement regarding drug quantity, asserting that the plea agreement limited the quantity of marijuana for which he was

responsible to the roughly 18 kilograms of marijuana seized from his home at the time of his arrest. The District Court ordered a Presentence Investigation Report (PSR), which attributed 271.3 kilograms of marijuana to Cook. PSR at 12. Cook filed objections to the PSR, again disputing the drug-quantity calculation and urging an 18-kilogram limit on that amount.

The District Court held two sentencing hearings at which both Cook and the government called witnesses. At the conclusion of the second hearing, the District Court determined that Cook's base offense level was 26, a level corresponding with at least 100 but less than 400 kilograms of marijuana. See U.S.S.G. § 2D1.1(c)(7).

Cook now argues that he reasonably believed the terms of the plea agreement limited his drug-quantity exposure to the roughly 18 kilograms of marijuana seized from his residence. Cook's argument fails. Cook agreed that the base offense level for his offense of conviction would be "at least 20, but could be as high as 28." Plea Agreement at 7. By stipulating to a base offense level of "at least 20" and "as high as 28," Cook effectively stipulated to a quantity of marijuana falling within the range represented by those offense levels. A base offense level of 20 corresponds to at least 40 but less than 60 kilograms of marijuana, and a base offense level of 28 corresponds to at least 400 but less than 700 kilograms of marijuana. See U.S.S.G. § 2D1.1(c)(6), (10). By entering into the plea agreement, Cook admitted responsibility for a quantity of marijuana of between 40 and 700 kilograms. The government did not advocate for a drug quantity outside the agreed-upon range.

Cook argues that our decision in United States v. DeWitt compels us to conclude that the government breached the plea agreement in this case. In DeWitt, the government and the defendant stipulated in the plea agreement to a specific drug quantity for which the defendant would be held accountable. 366 F.3d at 669. We held that the government breached the plea agreement when it initiated the presentation of evidence for the purpose of attributing a greater drug quantity to the

defendant pursuant to the broad relevant-conduct provision in the plea agreement.  <u>Id.</u> at 669–70.  In contrast to the plea agreement in <u>DeWitt</u>, however, the plea agreement in this case did not limit the government to a specific drug quantity, and the drug quantity advocated by the government was well within the corresponding base-offense-level range identified in the plea agreement.  We conclude that the government did not breach the plea agreement.

In sum, the waiver-of-appeal provision in the plea agreement forecloses Cook's arguments on appeal and therefore the appeal is dismissed.  And furthermore, even if the waiver-of-appeal provision were unenforceable, Cook's arguments on appeal fail, and we would affirm the judgment of the District Court.

_____