# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 08-3903

_____

United States of America,            *

                                   *

          Appellee,        *   Appeal from the United States

                                   *   District Court for the Southern

   v.                          *   District of Iowa.

                                   *

Jerry Smith,                  *

                                   *

          Appellant.     *

_____

Submitted: October 23, 2009
Filed: December 30, 2009

_____

Before COLLOTON, BENTON, Circuit Judges, and PIERSOL[1], District Judge.

_____

PIERSOL, District Judge.

_____

[1]The Honorable Lawrence L. Piersol, United States District Judge for the District of South Dakota, sitting by designation.

Jerry Smith pleaded guilty to one count of conspiracy to engage in the unlicensed dealing of firearms in violation of 18 U.S.C. § 371. The district court[2] varied from a level 20 guidelines sentencing range of 33 to 41 months and sentenced Smith to 27 months imprisonment to be followed by three years of supervised release. Smith appeals, arguing that the government breached the plea agreement by failing to recommend that Smith receive a two-level reduction in his advisory guidelines sentence for acceptance of responsibility. We affirm.

I.

On January 31, 2006, law enforcement officials visited the business location of a firearms dealership operated by Federal Firearms Licensee Linda Lawson ("Lawson"). The address was the home of Mabel Smith ("Mabel"), the mother of Lawson's boyfriend, Jerry Smith ("Smith"). During the inspection, law enforcement officials learned that Smith was connected to the business and informed Lawson, in Smith's presence, that Smith was prohibited from possessing firearms and should have no involvement with Lawson's business.

Law enforcement officials began to investigate whether Smith continued his involvement with Lawson's business. On February 25, 2006, an undercover officer engaged in a transaction with Lawson, Smith, and Mabel at a gun show in Des Moines, Iowa. All three were present at tables where their firearms were displayed and offered for sale. During the negotiation and sale of a 12-gauge Mossberg shotgun, Lawson and Mabel regularly solicited input from Smith as to how they could meet the officer's firearms needs either directly or indirectly through another dealership and sought Smith's approval before concluding the sale.

---

[2]The Honorable Robert Pratt, United States District Judge for the Southern District of Iowa.

On March 1, 2006, law enforcement officers sent a letter to Lawson which informed her that it was a violation of federal law for Smith to be involved in her firearms business. The letter concluded by informing her that "any continued affiliation of Mr. Smith in regards to your Federal Firearms License will result in adverse action."

On March 7, 2006, a Des Moines Police Department confidential informant met with Lawson and Smith at Mabel's residence to pick up handgun frames he purchased from them. Smith explained to Lawson that it would be best to wait before transferring the frames because law enforcement officials had been at their residence inspecting them only a few weeks earlier. During this meeting, Smith brought a box containing five handguns into the house. He took each handgun out of the box, showed them to the confidential informant, and asked the confidential informant if he could fix various problems with each. Smith stated he had fired one of the guns several times.

On March 14, 2006, the same confidential informant went to Mabel's residence where Smith discussed the status of firearm dealing, the profit they had made on a single firearm sale, and new guns they had obtained.

On April 2, 2006, an undercover officer bought three shotguns from Smith at a gun show in Marshalltown, Iowa. Smith invited the officer to help himself and to look at the table of firearms. During a conversation, Smith asked the officer if he had any firearms for sale, and they discussed a glock handgun the officer was supposedly interested in selling. When the officer placed the handgun on the table, Smith picked it up, examined it, and began negotiating a price. Smith and the officer discussed and negotiated for the potential sale of numerous firearms. During their conversation, Smith acknowledged that convicted domestic abusers could not possess firearms. When the officer claimed to have such a conviction, Smith explained to him how a straw purchase would work. After the officer's purchase of three handguns, Smith

gave the officer his card and invited him to call if there were any firearms which he and Lawson could provide to the officer in the future.

After the gun show had concluded on April 2, 2006, the same undercover officer called Smith at Lawson's residence and asked if a buddy could come by and pick up another firearm they had discussed and Smith approved. The officer also inquired if Smith had any more private firearms he could buy without paperwork and they discussed multiple firearms and the extent of Smith's inventory.

On April 5, 2006, law enforcement officials executed a federal search warrant at Lawson's residence. Smith was in bed. Law enforcement officials found a loaded .357 caliber revolver under the bed and an unloaded 12-gauge double barrel shotgun leaning against the wall. During the search, a total of 990 firearms, numerous rounds of ammunition, $10,360 in cash, and $162,600 in savings bonds were seized from the residence. Firearms were found lying unsecured throughout the residence, in gun racks, and in boxes. Firearms dealing business records were also recovered. A search warrant executed at Mabel's residence resulted in the seizure of eight firearms.

On August 7, 2007, the United States charged Smith and Lawson in a five-count indictment that alleged violations of Title 18 United States Code §§ 371, 922(a)(1)(A), 922(b)(5), 922(d), 922(g)(1), 924(a)(1)(D), and 924(a)(2). Smith subsequently pleaded guilty pursuant to a signed, written plea agreement to one count of conspiracy to engage in the unlicensed dealing of firearms in violation of 18 U.S.C. § 371.

The plea agreement contains a provision regarding acceptance of responsibility under the advisory guidelines which states in relevant part:

> The sentence to be imposed is solely within the District Court's discretion, as limited and guided by the United States Sentencing

Commission Guidelines, which apply in an advisory capacity to the sentencing. The Sentencing Guidelines establish a sentencing range based upon factors determined to be present in the case, which the parties include, but are not limited to, the following:

. . . .

c.      acceptance or lack of acceptance of responsibility, with the government agreeing to recommend a 2 level reduction in the sentence *with the parties stipulating that the Defendant will have accepted responsibility*[3] by signing this agreement, entering a guilty plea, cooperating with presentence investigation process, and not obstructing justice hereafter . . . .

After he pleaded guilty, Smith met several times with the probation officer who conducted the presentence investigation and wrote the presentence investigation report. During one such meeting, Smith provided the probation officer with a notebook of materials. In these materials, Smith stated that he did not feel that he and Lawson had committed a crime, but pleaded guilty because they thought a jury might rule otherwise. As a result of this statement, the probation officer did not recommend a reduction for acceptance of responsibility in the original presentence investigation report.

The government then recommended, and the probation officer and defense counsel agreed, that Smith would write a letter to the probation officer to clarify that he did accept responsibility. Smith wrote a letter to the probation officer that read:

---

[3]The Government states that due to typographical error, the words "with the parties stipulating that the Defendant will have accepted responsibility" was mistakenly omitted from its proper place prior to the words "by signing this agreement."

I did not intend to commit a crime, and if I did I am sorry and accept responsibility.

My intent was to help another human being whom I loved. I did not want her to have a heart attack with her bad heart and being over 125 pounds over-weight and her other medical problems.

I believed my full pardon which also included gun rights which I received from Governor Ray in 1981 would make me and her safe from any prosecution in case I touch any of her guns while I was engaged in selling her many tables of food products.

I will repeat my first sentence. I did not intend to commit a crime and if I did, I am sorry and by my plea accept responsibility.

In light of Smith's letter, the probation officer amended the presentence investigation report to recommend a 2 level reduction for acceptance of responsibility.

Prior to sentencing, the government filed a sentencing memorandum in which it argued that "[p]ost-plea agreement events establish that defendant does not clearly accept responsibility for his conduct, and the government argues that he may not merit a two-level reduction for doing so." Specifically, the government argued that Smith's claim that he believed his pardon from Governor Ray in 1981 resulted in the reinstatement of his gun rights cannot be true because he continued to engage in the unlawful conduct to which he pleaded guilty in this case even after he was advised by Alcohol, Tobacco, Firearms, and Explosives (ATF) agents on January 31, 2006, that he was a prohibited person and could not be involved in firearms sales. The government also argued at sentencing that Smith's letter implying that his only misdeed in connection with firearms was "touching" his co-defendant's guns was misleading when the record is clear that he actually negotiated sales of guns for his co-defendant's business. At sentencing, the government asked the court to deny

Smith the 2 level reduction for acceptance of responsibility and to consider imposing a 2 level obstruction of justice enhancement.

In the final presentence investigation report, the probation officer calculated a base offense level of 14 under USSG §2K2.1(a)(6) and although the report recognized that the parties had stipulated to 57 firearms being involved in the offense, the probation officer recommended a 10 level enhancement under USSG §2K2.1(b)(1)(E) because the offense involved more than two hundred (200) firearms. The probation officer also recommended in the final presentence investigation report a 2 level reduction for acceptance of responsibility under USSG §3E1.1(a) and stated that, "[t]he probation officer has no information indicating that the defendant impeded or obstructed justice."

At sentencing on November 19, 2008, the government explained its reasoning for stipulating to 57 firearms in the plea agreement and asked the court to apply a 6 level rather than a 10 level enhancement as was recommended in the presentence investigation report for the number of firearms involved in the offense. The government then presented testimony from the probation officer about the materials Smith submitted during the presentence investigation and argued that Smith's actions during the presentence investigation were uncooperative and may even have constituted an obstruction of justice.

During his allocution, Smith accused the investigating ATF agent of tampering with evidence by editing the video tape that recorded Smith selling firearms to the undercover agent. Smith also accused ATF of pressuring the prosecutor not to have the allegedly altered tapes examined. After Smith concluded, and before the court proceeded with sentencing, the court inquired whether Smith wanted to withdraw his guilty plea and proceed to trial.

After Smith indicated that he desired to proceed with sentencing, the court ruled that the base offense level under USSG §2K2.1(a)(6) was 14 and that 6 levels should

be added for the number of firearms involved based on the stipulation between the parties. The court denied Smith credit for accepting responsibility based upon his allocution and the letter he wrote to the probation officer during the course of the investigation. These rulings resulted in an offense level of 20 and a guideline range of 33 to 41 months. The court granted Smith a variance based on his poor health and that of his mother and sentenced Smith to 27 months imprisonment followed by three years of supervised release.

Smith filed a timely notice of appeal and filed a motion for release pending appeal. In support of the motion for release, Smith stated that the government breached the plea agreement by arguing that Smith should not receive a 2 level reduction for acceptance of responsibility.

In its order addressing Smith's motion for release pending appeal, the district court acknowledged that the government was bound to recommend an acceptance of responsibility reduction should Smith: (1) sign the agreement; (2) plead guilty; (3) cooperate with the presentence investigation process; and (4) not subsequently obstruct justice. The district court found that Smith fulfilled the first two conditions by signing the agreement and pleading guilty and as to condition four, declined to apply an enhancement for obstructing justice even though the court concluded "he was perilously close to so doing." As to condition three, the court stated that Smith's letter did not sufficiently obstruct the presentence investigation process so as to justify the Government's recommendation against the acceptance of responsibility reduction. Although the court concluded that Smith had "raised a close question as to whether the Government materially breached the plea agreement," the court ultimately denied Smith's motion for release pending appeal because he "failed to demonstrate that the relief granted would likely result in an incarceration sentence less than the appellate time plus the time he has already served in jail for this offense."

II.

In this case, the parties dispute whether Smith objected to the government's alleged breach of the plea agreement in a timely manner thus preserving the question for appeal. While questions regarding the interpretation and enforcement of a plea agreement are generally reviewed de novo, *United States v. DeWitt,* 366 F.3d 667, 669 (8th Cir. 2004) (citation omitted), if such questions have not been properly preserved for appeal, appellate-court authority to remedy the error is strictly circumscribed and the questions will be reviewed for plain error. *See Puckett v. United States,* 129 S.Ct. 1423, 1429 (2009) (citing Fed. R. Civ. P. 52(b)). "Under plain error review, we must determine whether there was (1) an error, (2) that is clear and obvious, and (3) that 'affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the district court proceedings.'" *United States v. Jeffries,* 569 F.3d 873, 875-76 (8th Cir. 2009) (quoting *Puckett,* 129 S.Ct. at 1429). "If these three requirements are satisfied, we may correct the error if it 'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (citing *Puckett*, 129 S.Ct. at 1429).

The government contends that Smith's claim that the government breached the plea agreement was not preserved because he did not object to the prosecutor's remarks at sentencing. The government argues that the Court should therefore review for plain error whether the prosecutor's arguments against a reduction for acceptance of responsibility were in breach of the plea agreement.

Smith, on the other hand, relying primarily on *United States v. McCray*, 849 F.2d 304 (8th Cir. 1988) (per curiam), argues that a claim has been preserved for appeal as long as the district court had an opportunity to address it on the merits whether it be in the context of a motion under Federal Rule of Criminal Procedure 35 or other similar motion or, as was the case in *McCray*, in a motion for release pending appeal. The issue in *McCray* was whether the defendant was required to first file a motion for relief with the district court before seeking an appeal on whether the

government breached the plea agreement. *McCray*, 849 F.2d at 305. We held that a Rule 35 or other similar motion would have served no useful purpose in light of the fact that the district court had already denied defendant's claim in his motion for release pending appeal and we accordingly reviewed the defendant's claim on direct appeal. *Id.* Smith argues that as in *McCray*, the district court addressed the merits of Smith's claim in its order addressing Smith's motion for release pending appeal and that we should therefore review de novo whether the government's arguments at sentencing were in breach of the plea agreement.

We conclude that according to the recent decision issued by the United States Supreme Court in *Puckett v. United States,* 129 S.Ct. 1423 (2009) and our subsequent decisions addressing this same issue, *United States v. Jeffries*, 569 F.3d 873 (8th Cir. 2009), *United States v. Martin,* No. 08-3881, 2009 WL 3335547 (8th Cir. Oct. 19, 2009), a defendant must object to a prosecutor's remarks as being in breach of the plea agreement at the time of sentencing in order to preserve such claim for appeal. Because Smith did not do so in this case, his claim should be reviewed for plain error. The Supreme Court in *Puckett* stated several reasons why the contemporaneous objection rule stated in Federal Rules of Criminal Procedure 51(b) applies to preserve a breach of plea agreement claim. First, the Court stated that the district court is "ordinarily in the best position to determine the relevant facts and adjudicate the dispute," and that it "can often correct or avoid the mistake so that it cannot possibly affect that the ultimate outcome." *Puckett,* 129 S.Ct. at 1428. Additionally, the Court stated that the rule "prevents a litigant from 'sandbagging' the court-remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor." *Id.* Because the defendant in *Puckett* failed to object to the government's arguments at the time of sentencing on the basis that they were in breach of the plea agreement, the Supreme Court affirmed the decision of the Court of Appeals to apply the plain-error test to the forfeited claim. *Id.* at 1433.

Smith argues that *Puckett* and *McCray* are not in conflict and as long as a district court has had an opportunity to reach the merits of a claim, whether, as in *Puckett*, upon objection at sentencing or, as in the present case, in a motion for release pending appeal, such a claim has been preserved for appeal. We disagree. The Supreme Court in *Puckett* made clear that in order to obtain a de novo review on appeal of a breach of plea agreement claim, a defendant must raise such an objection at the time of sentencing to allow the district court the opportunity to correct the alleged error. When Smith filed his motion for release pending appeal in the present case, the district court no longer had the ability to correct the alleged error as it had already denied Smith a reduction for acceptance of responsibility based, in part, on the letter that Smith had written to the probation officer which had been disclosed by the government in its sentencing memorandum. Applying a de novo review to Smith's claim absent a contemporaneous objection at the time of sentencing would also undermine the concern expressed by the Supreme Court in *Puckett* that litigants in this situation would be encouraged to "sandbag" and raise the error only if the result is not in their favor.

For these reasons, we conclude that because Smith did not object at the time of sentencing that the prosecutor's remarks were in breach of the plea agreement, such a claim has not been preserved for appeal. We will therefore review for plain error whether the government breached the plea agreement by failing to recommend a 2 level reduction for acceptance of responsibility.

III.

"Under plain error review, we must determine whether there was (1) an error, (2) that is clear and obvious, and (3) that 'affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the district court proceedings.'" *United States v. Jeffries,* 569 F.3d 873, 875-76 (8th Cir. 2009) (quoting *Puckett v. United States,* 129 S.Ct. 1423, 1429 (2009)). "If these

three requirements are satisfied, we may correct the error if it 'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (citing *Puckett*, 129 S.Ct. at 1429).

While the government was bound to recommend an acceptance of responsibility reduction should Smith: (1) sign the agreement; (2) plead guilty; (3) cooperate with the presentence investigation process; and (4) not subsequently obstruct justice, the government argues that it is not clear whether Smith fulfilled condition three (3) or four (4) which respectively required him to cooperate with the presentence investigation process and to not subsequently obstruct justice. The government contends that if not an obstruction of justice, we should conclude at the very least that Smith failed to cooperate with the presentence investigation when in his letter to the probation officer clarifying his acceptance of responsibility, he made several misleading or untrue statements. Specifically, the government argues that Smith's claim that he believed his pardon from Governor Ray in 1981 resulted in the reinstatement of his gun rights cannot be true because he continued to repeatedly engage in the unlawful conduct to which he pleaded guilty in this case even after he was advised by ATF agents on January 31, 2006, that he was a prohibited person and could not be involved in firearms sales. The government also argues that Smith's letter implying that his only misdeed in connection with firearms was "touching" his co-defendant's guns was misleading when the record is clear that he actually negotiated sales for his co-defendant's business.

Smith, on the other hand, argues that the prosecutor's remarks at sentencing were clearly in breach of the agreement because nowhere in the probation officer's presentence report did she indicate that Smith failed to cooperate during the presentence investigation process and further, that she had "no information indicating that the defendant impeded or obstructed justice." As further evidence that the government was clearly in breach of the plea agreement, Smith cites language from the district court's order denying Smith's motion for release pending appeal which

states that while the letter Smith provided the probation officer "calls into question Defendant's acceptance of responsibility, the Court cannot conclude that this letter sufficiently obstructed the presentence investigatory process so as to justify the government's recommendation against the acceptance of responsibility reduction."

We first take issue with Smith's characterization of the district court's finding in its order denying Smith's motion for release pending appeal. In its order, the district court did not conclude, as is argued by Smith in support of his appeal, that the Government clearly breached the plea agreement, but rather that the "Defendant has raised a close question as to whether the Government materially breached the plea agreement." Such a conclusion does not support Smith's contention that the government's argument at sentencing is plain error.

Furthermore, we find that the terms of the plea agreement did not preclude the government from making a good faith argument that Smith did not satisfy one or more of the conditions entitling him to such a recommendation. The plea agreement was entered into before Smith met with the probation officer. Once such a plea agreement was signed, Smith did not then have a license after his factual basis statement and plea acceptance to then say or do whatever he wished with no fear of having to meet an argument that he should nonetheless be denied acceptance of responsibility. The fact that the probation officer did not recommend that Smith be denied an acceptance of responsibility reduction does not mean the argument was made in bad faith. The false and misleading statements made by Smith which were highlighted by the government at sentencing at the very least presented a question of fact as to whether Smith fulfilled the conditions obligating the government to recommend the 2 level reduction for acceptance of responsibility.

For the foregoing reasons, we affirm the judgment of the district court.

_____