NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 11, 2012
Decided December 20, 2012

**Before**

WILLIAM J. BAUER, *Circuit Judge*

ANN CLAIRE WILLIAMS , *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

| | |
|---|---|
| No. 12-1505 | Appeal from the United States District Court for the |
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Northern District of Illinois, Eastern Division. |
| *v.* | No. 08 CR 530 |
| DWAYNE E. WILLIAMS, *Defendant-Appellant.* | Ronald A. Guzmán, *Judge.* |

**O R D E R**

Dwayne Williams challenges his 125-month prison sentence for possession of heroin. He argues that the district court permitted the government to violate his plea agreement by presenting evidence at his sentencing hearing beyond the facts stipulated in the agreement. At that hearing the government introduced testimony from one of Williams's drug suppliers that substantially increased the amount of drugs attributed to him. We conclude that the court did not err in allowing the evidence because the government never agreed to limit the evidence of relevant conduct presented at sentencing to that stipulated in the plea agreement.

Williams pleaded guilty to possession of heroin with intent to distribute, *see* 21 U.S.C. § 841(a)(1). He admitted to purchasing 500 grams of heroin, selling most of it,

and storing the rest in the trunk of his car for later sale. He also admitted that he hid crack cocaine in the same trunk and had sold more than 600 grams of cocaine to an informant. In a written plea agreement, the parties agreed that based on then-known facts, he was accountable for the equivalent of between 400 and 700 kilograms of marijuana, yielding a base offense level of 28. The parties also reserved the right to dispute a 2-level increase based on the government's contention that Williams possessed a firearm in connection with his offense. And the government agreed to recommend up to a 3-level reduction for Williams's acceptance of responsibility. With these adjustments in mind, the parties anticipated an adjusted offense level of 27, which combined with Williams's zero criminal-history points would provisionally result in a guidelines range of 70 to 87 months' imprisonment.

Both parties agreed that the guidelines calculations were "preliminary in nature." Williams also acknowledged that the calculations were "non-binding predictions upon which neither party is entitled to rely," that they were based on "facts now known to the government," and that after "further review of the facts," the government may conclude that different or additional guidelines provisions applied. The parties remained free to recommend whatever sentence they deemed appropriate, and either party could correct errors in applying any of the guidelines by stipulation or by statement to the Probation Office or the district court.

Four months later, when the government submitted its version of the offense to the probation office, it revised its calculations. It stated that based on an upcoming cooperation agreement with one of Williams's suppliers Emmeterio Gutierrez, it intended to present evidence at sentencing of additional drug quantities attributable to Williams. Then, a few days before the scheduled sentencing hearing, the government estimated in its sentencing memorandum that this new evidence would raise the amount of cocaine attributable to Williams to the equivalent of 19,000 kilograms of marijuana. By raising the attribution of marijuana from 700 to 19,000 kilograms of marijuana, the government's calculations increased his base offense level from 28 to 36. Williams complained that this evidence should not be considered because it constituted an unfair surprise. He emphasized that the government knew about Gutierrez's evidentiary proffer as long as two years before it reached its plea agreements with Williams and Gutierrez. He also insisted that the new evidence was not sufficiently credible or relevant to his offense.

At the sentencing hearing held five months later, the government called Gutierrez to testify to additional drug quantities. Williams renewed his objection to the testimony as irrelevant. He also argued that if the government had believed Gutierrez when, two years earlier, he first proffered his account of the larger amount of drugs attributable to Williams, it should have indicted Williams for those quantities then.

The district court overruled Williams's objections because, the court reasoned, the government could not fully rely on Gutierrez's testimony until after it had reached its cooperation agreement with him. The court further found Gutierrez's testimony credible and that Williams could not argue unfair surprise because he knew about the events to which Gutierrez testified. The court calculated a guidelines range of 108 to 135 months' imprisonment and sentenced Williams to 125 months.

The sole issue on appeal is whether the government breached its plea agreement with Williams by having Gutierrez testify to additional relevant conduct beyond the facts discussed in the plea agreement. Because the agreement states that Williams was responsible for at most the equivalent of 700 kilograms of marijuana, yielding a base offense level of 28, Williams contends that the government could not present further evidence yielding a higher base offense level.

As a preliminary matter, the parties debate whether Williams forfeited this contention by failing to object in the district court that the government had breached the plea agreement. "Forfeiture occurs when a defendant negligently fails to assert a right in a timely fashion." *United States v. Brodie*, 507 F.3d 527, 530 (7th Cir. 2007). An objection to a particular guidelines calculation does not necessarily preserve for appeal a claim that, by proposing the calculation, the government breached a plea agreement. *See Puckett v. United States*, 556 U.S. 129, 133 (2009) (distinguishing defendant's preserved argument that he should receive a reduction for acceptance of responsibility from an unpreserved argument that the government had breached their plea agreement by opposing the reduction); *United States v. Winters*, 695 F.3d 686, 689 (7th Cir. 2012) (finding defendant had not objected to alleged breach of plea agreement where he only objected to application of career-offender status that raised his base offense level above agreed level).

Williams maintains that he adequately preserved his contention, but he is mistaken. Although Williams did twice object to the government's attempt to introduce further evidence of relevant conduct, the government is correct that he never contended that the government's proffer breached its plea agreement. In fact, Williams never even mentioned any particular provisions of the agreement, let alone maintained that a provision was breached. Rather, he complained only that the evidence should be precluded because it should have been produced earlier and was not credible. True, Williams's sentencing memorandum cites *United States v. Artley*, 489 F.3d 813 (7th Cir. 2007)—a decision that addresses the alleged breach of a plea agreement; he cited it again at the sentencing hearing. But Williams's reliance on *Artley* was insufficient to preserve the alleged error because he cited only that decision's discussion of the reasonableness of the defendants' sentences.

*See* 489 F.3d at 824. Williams therefore forfeited this argument, so we review it only for plain error. *Puckett*, 556 U.S. at 143; *Winters*, 695 F.3d at 689; *Artley*, 489 F.3d at 824.

But even if we were to give the matter plenary review, our conclusion would be the same: The district court acted properly because the government did not breach its plea agreement. Williams correctly observes that the government is strictly bound to fulfill any promise offered in consideration of a guilty plea. *See Santobello v. New York*, 404 U.S. 257, 262 (1971); *United States v. O'Doherty*, 643 F.3d 209, 217 (7th Cir. 2011). We interpret the terms of a plea agreement "according to the parties' reasonable expectations," construe any ambiguities against the government, and hold the government to the literal terms of the plea agreement construed as a whole. *O'Doherty*, 643 F.3d at 217 (citing *United States v. Monroe*, 580 F.3d 552, 556 (7th Cir. 2009); *United States v. Woods*, 581 F.3d 531, 534 (7th Cir. 2009)); *United States v. Schilling*, 142 F.3d 388, 395 (7th Cir. 1998).

Williams could not, however, have reasonably expected the government to be bound by the agreement's calculations of a base offense level of 28 given the other terms of the agreement. *See O'Doherty*, 643 F.3d at 217–18; *Schilling*, 142 F.3d at 396; *United States v. Billington,* 844 F.2d 445, 450 (7th Cir. 1988). Williams acknowledged that the agreement's calculations were "preliminary in nature," that they were "non-binding predictions upon which neither party is entitled to rely," and that the government could change its recommended range based on "further review of the facts." Emphasizing its provisional nature, the agreement also states that the calculated guidelines range was "based on the facts now known to the government," thereby connoting that a different range might be calculated if additional facts arose. And the agreement further alerted Williams that the government was not limited to the relevant conduct that Williams admitted because it also provides that the government would "fully apprise" the district court about Williams's conduct related to the charges against him, as it did in its presentencing submissions. Under these provisions, the government was free to provide additional evidence of relevant conduct. *See O'Doherty*, 643 F.3d at 217–18 (concluding that the government was not limited to the relevant conduct recounted in a plea agreement containing nearly identical terms to Williams's).

Williams responds that because the plea agreement was based on "facts now known to the government" and the government had "known" about Gutierrez's proffer two years earlier, the government could not base additional relevant conduct on that proffer. But because he bears the burden of proving breach, *Puckett*, 556 U.S. at 141; *Artley*, 489 F.3d at 824, Williams must show that the government had enough confidence in Gutierrez's earlier assertions to constitute "facts now known" to it. The district court found no evidence that the government treated those earlier assertions as "facts," and nothing in the record suggests that its finding was clearly erroneous. *See United States v. Diaz*, 922 F.2d 998, 1007

(2d Cir. 1990) (affirming as not clearly erroneous district court's finding that government did not have earlier knowledge of misconduct, even if it had "suspicions"). To the contrary, the record suggests a *lack* of confidence because, as Williams agrees, the government did not indict Williams for the additional conduct back when it first learned of it.

Williams next relies on *United States v. Dewitt*, 366 F.3d 667 (8th Cir. 2004), and *United States v. Tobon-Hernandez*, 845 F.2d 277 (11th Cir. 1988), to argue that the plea agreement barred further evidence of relevant conduct, but both cases are distinguishable. The government in *Dewitt* and *Tobon-Hernandez* stipulated to specific drug quantities for which the defendant was responsible. *See Dewitt*, 366 F.3d at 668; *Tobon-Hernandez*, 845 F.2d at 278. By contrast, the government here only agreed to "preliminary" calculations and drug quantities based on Williams's admitted conduct. Moreover, the plea agreements in *Dewitt* and *Tobon-Hernandez* do not appear to have contained the provisions found in the plea agreement here that negate the reasonable expectation that the government would be bound by specific offense quantities or offense levels. *See O'Doherty*, 643 F.3d at 218.

Finally, Williams argues that if the government wanted to reserve the right to present evidence of additional relevant conduct, it should have negotiated the right expressly, just as the parties reserved the right to dispute the firearm enhancement. But the government did reserve the right to present additional evidence when Williams agreed that the base offense calculation of 28 was "preliminary," subject to change based on "further review of the facts," and "non-binding." Williams replies that if those terms give the government the freedom to seek a higher base offense level, they render the parties' reservation about the firearm enhancement superfluous. But the firearm reservation simply shows that the parties were already engaged in a contest about that enhancement. It did not prohibit the parties from disputing other issues.

Because the district court did not err, plainly or otherwise, in admitting the evidence of additional relevant conduct, we AFFIRM the district court's judgment.