# United States Court of Appeals

### For the Eighth Circuit

_____

No. 18-3026

_____

United States of America

*Plaintiff - Appellee*

v.

Lamaar Moore

*Defendant - Appellant*

_____

No. 18-3474

_____

United States of America

*Plaintiff - Appellee*

v.

Kearnice C. Overton, also known as Kearnice Overton

*Defendant - Appellant*

_____

No. 18-3732

_____

United States of America

*Plaintiff - Appellee*

v.

Angelo Johnson

*Defendant - Appellant*

_____

Appeals from United States District Court
for the Southern District of Iowa - Davenport

_____

Submitted: September 27, 2019
Filed: January 7, 2020
[Unpublished]

_____

Before SMITH, Chief Judge, WOLLMAN and ERICKSON, Circuit Judges.

_____

PER CURIAM.

Lamaar Moore, Kearnice Overton, and Angelo Johnson pleaded guilty to offenses related to a drug conspiracy. They challenge their sentences on appeal, arguing that the district court[1] erred in calculating their offense levels under the U.S. Sentencing Guidelines (U.S.S.G. or Guidelines). Overton also argues that he is entitled to resentencing because the government breached the plea agreement. We affirm.

## I. Lamaar Moore

Moore pleaded guilty to conspiracy to manufacture, distribute, and possess with intent to distribute at least 100 kilograms of a mixture and substance containing

_____

[1]The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa.

marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846, and possession with intent to distribute less than 50 kilograms of a mixture and substance containing marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D). Before sentencing, Moore objected to the presentence report's recommendation that his base offense level be increased by three for his aggravating role in the offense, see U.S.S.G. § 3B1.1(b), and by two for maintaining a premises for the purpose of manufacturing or distributing controlled substances, see U.S.S.G. § 2D1.1(b)(12). The district court overruled Moore's objections and applied the enhancements. Moore's total offense level was 30, his criminal history category was III, and his Guidelines sentencing range was 121 to 151 months' imprisonment. The district court varied downward, imposing a 108-month sentence on the conspiracy count and a concurrent 60-month sentence on the possession count.

Moore argues that the district court clearly erred in finding that he had acted as a manager or supervisor in the drug conspiracy. See United States v. Alcalde, 818 F.3d 791, 794 (8th Cir. 2016) (standard of review). Guidelines § 3B1.1(b) instructs the district court to apply a three-level increase "[i]f the defendant was a manager or supervisor . . . and the criminal activity involved five or more participants or was otherwise extensive." We have said that a defendant may be subject to the enhancement even if he managed or supervised only one participant in a single transaction. United States v. Irlmeier, 750 F.3d 759, 764 (8th Cir. 2014). A witness testified at Moore's sentencing hearing that he once overheard Moore direct his girlfriend to obtain marijuana from a certain location and sell it at a certain price to Moore's customer. Moore acknowledges that his girlfriend sometimes sold marijuana for him when he was traveling, but he contends that he did not control her actions because they were participants in a joint enterprise. The district court's finding to the contrary is not clearly erroneous, however, because the evidence permits a finding that Moore managed or supervised his girlfriend with respect to at least one transaction.

Moore next argues that the district court clearly erred in finding that he maintained his residence for the purpose of distributing a controlled substance. See United States v. Miller, 698 F.3d 699, 705 (8th Cir. 2012) (standard of review). Moore shared the residence with his girlfriend. He claims that it was primarily their family home and that there is "little evidence that the couple used the residence for the business itself." Moore's Br. 11. Guidelines § 2D1.1(b)(12) instructs the district court to apply a two-level increase for "maintain[ing] a premises for the purpose of manufacturing or distributing a controlled substance." For the enhancement to apply, drug distribution "need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises." U.S.S.G. § 2D1.1 cmt. n.17. We have held that the enhancement applies "when a defendant uses the premises for the purpose of substantial drug-trafficking activities, even if the premises was also [the] family home at the times in question." Miller, 698 F.3d at 707.[2] Moore conceded that drug transactions occurred at his residence. When the apartment was searched, officers seized nine empty one-pound vacuum seal bags with marijuana residue, approximately two pounds of high-grade marijuana, digital scales, and clear plastic baggies, which the district court found to be "substantial indicia of high levels of trafficking at the home." We conclude that the district court did not clearly err in finding that Moore maintained his residence for the purpose of distributing marijuana.

## II. Kearnice Overton

Overton pleaded guilty to conspiracy to manufacture, distribute, and possess with intent to distribute 100 grams and more of a mixture and substance containing heroin and 100 kilograms and more of a mixture and substance containing marijuana,

---

[2]Moore argues that United States v. Miller was wrongly decided, but "[i]t is a cardinal rule in our circuit that one panel is bound by the decision of a prior panel." Owsley v. Luebbers, 281 F.3d 687, 690 (8th Cir. 2002) (per curiam).

in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 846, and 851. In determining that Overton's base offense level was 32, the presentence report attributed quantities of heroin, marijuana, and cocaine to him. Overton objected, arguing that his plea agreement prevented the government from presenting evidence of cocaine distribution and that any cocaine distribution was not relevant conduct under U.S.S.G. § 1B1.3. The district court overruled Overton's objections and determined that his base offense level was 32, that his total offense level was 37, that his criminal history category was VI, and that his Guidelines sentencing range was 360 months' to life imprisonment. The district court varied downward and imposed a 300-month sentence.

Overton first argues that the district court erred in concluding that the government did not breach the plea agreement by presenting evidence of cocaine distribution. He claims that the government stipulated in the plea agreement that the conspiracy involved only heroin and marijuana. We review *de novo* issues concerning the interpretation and enforcement of a plea agreement. United States v. DeWitt, 366 F.3d 667, 669 (8th Cir. 2004). "Plea agreements are contractual in nature, and should be interpreted according to general contract principles." Id.

Although the plea agreement specified heroin and marijuana as types of drugs that would be used to calculate Overton's Guidelines sentencing range, it did not exclude other types of drugs from that calculation. Overton admitted that the object of the conspiracy was to "manufacture, distribute, and possess with intent to distribute controlled substances including marijuana and heroin." The plea agreement stated that the advisory Guidelines sentencing range would be "based upon factors determined to be present in the case, which include, but are not limited to . . . [t]he type and quantity of drugs involved in the offense." The parties did not stipulate to Overton's base offense level, but instead agreed "that the conspiracy involved more than 100 grams of heroin and more than 100 kilograms of marijuana the exact amount of drugs to be attributed to the defendant (above the amount admitted here) will be determined by the court at the time of sentencing based upon U.S.S.G. § 1B1.3."

Moreover, the plea agreement reserved to both parties the right to "make whatever comment and evidentiary offer they deem appropriate at the time of sentencing . . . , provided that such offer or comment does not violate any other provision of this Plea Agreement." We conclude that the government did not violate any provision of the plea agreement when it presented evidence that Overton distributed cocaine. See United States v. Leach, 491 F.3d 858, 864 (8th Cir. 2007) (holding that the government did not breach the plea agreement because it "did not advocate for anything inconsistent with the stipulations of the plea agreement; it advocated for something that was not resolved by the plea agreement").

We disagree with Overton's contention that our decisions in United States v. Lara, 690 F.3d 1079 (8th Cir. 2012), and United States v. DeWitt, 366 F.3d 667 (8th Cir. 2004), control here. In those cases, "we held that the Government breached a plea agreement when it stipulated to a drug quantity and corresponding base offense level and then initiated an effort at the sentencing hearing to obtain a higher drug quantity and base offense level." See United States v. Noriega, 760 F.3d 908, 911 (8th Cir. 2014). In this case, the government did not stipulate to a drug type or quantity or to a base offense level. The parties merely agreed that the conspiracy involved at least 100 grams of heroin and 100 kilograms of marijuana—the drug types and quantities charged in the indictment—and allowed the district court to determine the drugs and drug quantities to be attributed to Overton at sentencing. See United States v. Guardado, 863 F.3d 991, 993 (8th Cir. 2017) (holding that the government did not breach the plea agreement when it urged the district court to sentence the defendant based on a quantity of drugs greater than the amount to which the defendant stipulated in the factual basis statement of the plea agreement, because the plea agreement did not specify the amount of drugs that would be used to calculate the defendant's sentencing range and it allowed both parties "to present at sentencing any evidence and argument on issues not explicitly agreed to or decided in the document").

-6-

Overton next argues that the district court erred in determining his base offense level. He contends that the district court should not have included cocaine in its drug quantity calculation because any cocaine distribution did not constitute relevant conduct. According to Overton, the alleged cocaine distribution occurred well before he entered into the conspiracy to distribute heroin and marijuana. Overton also challenges the credibility of the confidential informants who told law enforcement that Overton distributed cocaine after 2011. He notes that law enforcement found no cocaine or cocaine residue in any of its searches.

The base offense level for Overton's conspiracy conviction is based upon drug quantity. See U.S.S.G. § 2D1.1(c). "[I]n a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction"—that is, if they were part of the defendant's relevant conduct. U.S.S.G. § 1B1.3 cmt. background. Factors to be considered in determining whether uncharged conduct is part of a common scheme or plan include the similarity, regularity, and temporal proximity of the charged and uncharged conduct. U.S.S.G. § 1B1.3 cmt. n.5(B)(ii). We review the district court's relevant conduct findings for clear error. United States v. Ault, 446 F.3d 821, 823 (8th Cir. 2006).

The district court did not clearly err in finding that Overton's cocaine distribution was relevant conduct. Overton admitted in his plea agreement that the conspiracy to distribute marijuana and heroin began "[s]ometime prior to October of 2013." Law enforcement officers testified at sentencing that confidential informants, whom the officers found to be reliable, had purchased cocaine from Overton from 2011 to 2012 and from 2013 to early 2014. A witness testified that Overton had supplied him with cocaine for distribution from 2011 until the witness was arrested in 2013. The witness further testified that the conspiracy changed while he was in prison. Upon his release in 2016, "[i]t was no longer crack cocaine and cocaine, it was strictly marijuana." Another witness testified that Overton had taught him how

to cook cocaine into crack cocaine and that he had purchased cocaine from Overton from 2009 until the witness's arrest in 2011. The government's evidence thus showed that Overton's conduct with respect to cocaine distribution and the charged conspiracy involved some of the same participants and partly overlapped in time. The record supports the court's credibility findings, as well as its finding that Overton was involved in an "ongoing criminal conspiracy to distribute narcotics," in which the drugs distributed "change[d] over time, but the players stayed the same."

## III. Angelo Johnson

Johnson pleaded guilty to conspiracy to manufacture, distribute, and possess with intent to distribute at least 100 grams of a mixture and substance containing heroin and less than 50 kilograms of a mixture and substance containing marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 841(b)(1)(D), and 846. Johnson was sentenced to 200 months' imprisonment. In determining Johnson's Guidelines sentencing range, the district court found that he was responsible for distributing more than 1 kilogram of heroin; applied a two-level increase for possession of a firearm, see U.S.S.G. § 2D1.1(b)(1); applied a three-level increase for his role in the offense as a manager or supervisor, see U.S.S.G. § 3B1.1(b); and denied a three-level reduction for acceptance of responsibility, see U.S.S.G. § 3E1.1. Johnson's total offense level was 35, his criminal history category was IV, and his Guidelines sentencing range was 235 to 293 months' imprisonment. The district court varied downward and imposed a 200-month sentence. Johnson challenges the district court's drug calculation, the application of the two enhancements, and the denial of the reduction for acceptance of responsibility.

Johnson argues that the district court clearly erred in finding that he had distributed more than one kilogram of heroin. See United States v. Harris, 908 F.3d 1151, 1153 (8th Cir. 2018) (standard of review). We disagree. One witness testified that she purchased between one-half to one gram of heroin from Johnson every day for two years. A second witness testified that he purchased one to two grams of

heroin every day for two years. Using the conservative numbers, the court found that the first witness had purchased 365 grams from Johnson and that the second had purchased 730 grams. The government also presented evidence that Johnson distributed other quantities of heroin. We thus conclude that the district court did not clearly err in finding that Johnson distributed more than one kilogram of heroin. See U.S.S.G. § 2D1.1 cmt. n.5 ("Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance.").

Johnson next argues that the district court clearly erred in finding that he possessed a firearm. See United States v. Anderson, 618 F.3d 873, 879 (8th Cir. 2010) (standard of review). Guidelines § 2D1.1(b)(1) instructs the district court to apply a two-level increase "[i]f a dangerous weapon (including a firearm) was possessed." This enhancement "reflects the increased danger of violence when drug traffickers possess weapons," and it "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1 cmt. n.11(A). At sentencing, a police sergeant testified regarding Johnson's arrest and the search of his residence.[3] An informant reported that Johnson had been holding a gun before his arrest. A pill bottle containing heroin, crack cocaine, and alprazolam was found in the stairwell leading to the basement. A Glock nine-millimeter pistol with an extended magazine and two additional magazines were recovered from the basement of Johnson's residence. The pistol had been buried in

---

[3]The presentence report identified Johnson's residence as being located in the 400 block of Ninth Street in Davenport, Iowa, where the firearm was found. In his appellate reply brief, Johnson argues that the government did not prove that Johnson lived at the Ninth Street address. The government was not required to offer evidence that Johnson lived there, however, because Johnson did not object to the paragraph in the presentence report identifying the Ninth Street address as his residence. See United States v. Razo-Guerra, 534 F.3d 970, 975 (8th Cir. 2008) (explaining that in determining whether the government has proven the facts necessary to establish a sentencing enhancement, the district court "may accept any undisputed portion of the [presentence report] as a finding of fact" (quoting Fed. R. Crim. P. 32(i)(3)(A))).

loose dirt, and officers noticed dirt on Johnson's pants and cobwebs in his hair when they arrested him. Two witnesses also testified that Johnson possessed firearms during drug deals. The evidence thus supported the findings that Johnson possessed a firearm and that it was not "clearly improbable" that the firearm was connected with the offense.

Johnson contends that the district court clearly erred in finding that he managed or supervised another participant in the drug conspiracy. Although he does not dispute the evidence that his sister and an individual identified as "MellyMel" sometimes delivered heroin after buyers placed orders with him, Johnson argues that the government did not produce any evidence of supervision, management, or control. A fair inference from the evidence presented is that Johnson instructed his sister and MellyMel where to meet his customers and how much to collect from them, and we thus conclude that the evidence is sufficient to support the district court's finding that Johnson acted as a manager or supervisor. See Alcalde, 818 F.3d at 794 (holding that the district court did not err in applying a role enhancement based on evidence that the defendant "directed the actions of two coconspirators by instructing them to deposit drug proceeds and by instructing one of them to send photos of drug packages").

Finally, Johnson argues that the district court clearly erred in denying him a three-level decrease for accepting responsibility under Guidelines § 3E1.1. United States v. Fischer, 551 F.3d 751, 754 (8th Cir. 2008) (standard of review). The district court denied the decrease because Johnson challenged the amount of drugs involved, the manner in which they were distributed, and whether he possessed a firearm. The evidence set forth above wholly discredited Johnson's claim that he did not possess the Glock nine-millimeter firearm. As the district court explained, firearms "are not peripheral to drug conspiracies and it isn't peripheral here." Because Johnson falsely denied or frivolously contested relevant conduct the court determined to be true—particularly his possession of a firearm— the district court did not err in concluding that he acted in a manner inconsistent with acceptance of responsibility.

See U.S.S.G. § 3E1.1 cmt. n.1(A) ("A defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility, but the fact that a defendant's challenge is unsuccessful does not necessarily establish that it was either a false denial or frivolous . . . .").

The judgments are affirmed.

_____