# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1471

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Western |
| | * | District of Missouri. |
| Tyler M. Leach, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: February 14, 2007
Filed: June 22, 2007

_____

Before WOLLMAN, BYE, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Tyler Leach pleaded guilty, pursuant to a plea agreement, to knowingly using a facility of interstate commerce to attempt to persuade, induce, and entice a minor to engage in illegal sexual activity, in violation of 18 U.S.C. § 2422(b). In sentencing Leach, the district court declined to apply enhancements advocated by the government under U.S.S.G. § 4B1.5(a) or, alternatively, under § 4B1.5(b). Leach was sentenced to 72 months' imprisonment. The government appeals the district court's decision that neither enhancement applies. We reverse.

## I. *Background*

On February 22, 2005, Leach pleaded guilty in Kansas state court to attempted aggravated criminal sodomy with a child under the age of 14 years ("the Kansas offense"). The Kansas offense involved Leach receiving oral sex from a 13-year old girl that he had met in an internet chat-room. Leach's sentencing on that offense was set for March 15, 2005.

On March 8, 2005, one week before his scheduled sentencing on the Kansas offense, Leach conversed in a chat-room with someone that he thought was a 14-year old girl named "Amber." However, "Amber" was actually an undercover FBI agent. Leach's conversations with "Amber" quickly became sexual. The next day, Leach again contacted "Amber" and made arrangements to travel from his residence in Lawrence, Kansas, to her residence in Kansas City, Missouri, to engage in sexual activity. On March 10, 2005, Leach arrived at the Kansas City, Missouri address provided by "Amber," and was arrested by federal agents. During a post-arrest interview, Leach admitted that he had arranged to have vaginal and oral sex with "Amber," whom he believed to be a 14-year old girl. Because of Leach's arrest, his sentencing on the Kansas offense did not occur as scheduled.

The government charged Leach in a three-count federal indictment with knowingly using a facility of interstate commerce to attempt to entice a minor into engaging in illegal sexual conduct, in violation of 18 U.S.C. § 2422(b) (Count One); traveling in interstate commerce for the purpose of engaging in illicit sexual conduct with another person, in violation of 18 U.S.C. § 2423(b) (Count Two); and criminal forfeiture, pursuant to 18 U.S.C. § 2253 (Count Three). Leach entered into a plea agreement, pleading guilty to Count One in return for the government dropping the remaining counts. In the plea agreement, Leach acknowledged that he was subject to a 5-year minimum and a 60-year maximum sentence under 18 U.S.C. § 2426(a)

because his federal "offense occurred after [Leach] had a prior sex offense conviction."

The parties stipulated in the plea agreement that: (1)"the applicable Guidelines section for the offense was U.S.S.G. § 2G1.3 (Travel to engage in prohibited sexual conduct with a minor);" (2) "the base level offense is 24 pursuant to U.S.S.G. § 2G1.3(a);" (3) Leach was subject to a two-level enhancement pursuant to U.S.S.G. § 2G2.2(b)(3)(A) because the offense involved the use of a computer; (4) Leach was entitled to a three-level reduction for acceptance of responsibility; (5) "there [was] no agreement between the parties regarding the defendant's criminal history category;" (6) neither party would seek a departure from the applicable guidelines range; and (7) the court would determine the "applicable criminal history category after receipt of the presentence investigation report."

Additionally, the plea agreement limited its scope to issues explicitly addressed therein and had no effect on any unmentioned Sentencing Guidelines issues. As to any unmentioned issues, "the parties were free to advocate their respective positions at the sentencing hearing." It is undisputed that the plea agreement was negotiated without any consideration of U.S.S.G. § 4B1.5. In fact, the government acknowledges that it was "completely unaware" of the potential applicability of the enhancement when it negotiated and executed the plea agreement.

The presentence investigation report ("PSR") was prepared on October 3, 2005, and revised, along with an addendum, on November 3, 2005. The PSR concluded that Leach's Guidelines range was 60–63 months[1] based on an offense level of 23 and criminal history category of II. Neither party objected to these calculations. Thereafter, on November 10, 2005, the probation office filed a second addendum to

---

[1]The Guidelines range would have been 51–63 months, if not for the statutory minimum sentence of 60 months.

the PSR, stating that "the guidelines were inaccurately calculated" in the original PSR and suggesting that Leach was subject to an enhancement under Guidelines § 4B1.5(a) based on the existence of the Kansas offense for which he had already been adjudicated guilty but had not yet been sentenced. If the § 4B1.5(a) enhancement applied, Leach's offense level would have been 34 with a criminal history Category V, making Leach's Guidelines range 168–210 months' imprisonment. Leach timely objected to the § 4B1.5(a) enhancement.

Both parties filed briefs, prior to sentencing, on the applicability of the § 4B1.5(a) enhancement. Leach contended that the enhancement did not apply because he had not yet been sentenced for the Kansas offense, and therefore had not yet sustained a prior sex offense *conviction*. Additionally, Leach urged the court to honor the parties' stipulations in the plea agreement and sentence him accordingly. The government, despite having not objected to the initial or first-amended PSR, which did not include the § 4B1.5 enhancement—and admitting that it had previously been "completely unaware" of § 4B1.5—adopted the position of the probation office and advocated for the application of § 4B1.5(a).

On December 20, 2005, the court held a hearing on the applicability of § 4B1.5(a) and concluded that the enhancement did not apply because Leach had not yet been sentenced for the Kansas offense. The court determined that it was unclear whether the "conviction" requirement of § 4B1.5(a) required the defendant to have been sentenced for the prior offense or merely have been adjudicated guilty by plea of guilty, nolo contendre, or a finding of guilt. Based on the failure of the enhancement section to define the term "conviction," recent legislative enactments regarding the term, and the rule of lenity, the court refused to apply the § 4B1.5(a) enhancement to Leach.[2]

---

[2]After the court ruled that § 4B1.5(a) did not apply, Leach stated for the record that in the event the court's decision on the enhancement was overturned, his position was that the plea agreement prevented the government from advocating for the

The government moved for reconsideration of the court's ruling on the § 4B1.5(a) enhancement, and the probation office filed a third addendum to the PSR, suggesting that if § 4B1.5(a) did not apply, then a five-level enhancement under § 4B1.5(b) should apply because the defendant had engaged "in a pattern of activity involving prohibited sexual conduct." If § 4B1.5(b) applied, Leach's total offense level would increase from 23 to 28, causing his Guidelines range to increase from 60–63 months to 87–108 months' imprisonment. Both parties filed sentencing briefs regarding the applicability of § 4B1.5(b).

On January 13, 2006, the court conducted Leach's sentencing hearing and heard arguments on both the reconsideration of § 4B1.5(a) and the applicability of § 4B1.5(b). After oral argument, the court denied the government's motion to reconsider its ruling on the § 4B1.5(a) enhancement, concluding that the government had no standing to seek the enhancement because it had failed to timely object to the original PSR.[3] Moreover, the court determined that the plea agreement prevented the government from advocating for the enhancement. Alternatively, the court denied the motion to reconsider for the same reasons given in its original decision—that it was unclear whether § 4B1.5(a)'s conviction requirement required a defendant to have been sentenced on the conviction or merely adjudicated guilty and that the rule of lenity favored Leach. Further, the court determined that § 4B1.5(b) was inapplicable because the government failed to prove two prior occasions that were distinct from the offense of conviction.

---

enhancement. At no time during the December 20, 2005, hearing did Leach assert that the government's failure to object to the original PSR precluded it from advocating for enhancement.

[3]Prior to the January 13, 2006 sentencing hearing, Leach had not argued that the government had no standing to advocate for the enhancements because it had failed to timely object to the original PSR which did not include either enhancement.

The district court ultimately concluded that Leach's offense level was 23, his criminal history was a Category II and his advisory guideline range was 60–63 months. The court then sentenced Leach to 72 months' imprisonment, a 9-month increase from the top of the calculated Guidelines range. The government appeals.

## II. *Discussion*

The government contends that the district court erred in not applying § 4B1.5(a), or alternatively, § 4B1.5(b). Leach agrees with the district court's conclusion that neither enhancement should apply but alternatively asserts that the plea agreement and the government's failure to timely object to the original PSR prevent it from advocating for either enhancement.

### A. *Untimely Objections to the PSR*

Federal Rule of Criminal Procedure 32(f) states that "[w]ithin 14 days after receiving the presentence report, the parties must state in writing any objections . . . contained in or omitted from the report." "The reason for the fourteen-day filing requirement is 'so that the objections can be addressed and investigated prior to the sentencing hearing.'" *United States v. May*, 413 F.3d 841, 849 (8th Cir. 2005) (quoting *United States v. Jones*, 70 F.3d 1009, 1010 (8th Cir. 1995)) (emphasis deleted).

Here, the probation officer did not include the § 4B1.5(a) enhancement in the initial or first-amended PSR, and the government did not object to the omission. However, when the probation office amended the PSR, through the second addendum, to include the § 4B1.5(a) enhancement, Leach was put on notice—more than a month before his initial sentencing hearing—that the enhancement could be at issue. This gave Leach ample opportunity before sentencing to prepare a sentencing memoranda on the applicability of § 4B1.5(a) and formulate an argument regarding the enhancement. Given these circumstances, any possible prejudice to Leach from the government's failure to object to the original and first-amended PSR was cured by the adequate opportunity he was given to oppose the enhancement. *See United States v.*

*Soto-Beniquez*, 356 F.3d 1, 52 (1st Cir. 2004) ("Any possible prejudice to [defendant] from the government's non-compliance [with Federal Rule of Criminal Procedure 32] was cured by the district court's two-week continuance to give defense counsel an adequate opportunity to respond to the government's late submission."); *United States v. Young*, 140 F.3d 453, 457 (2d Cir. 1998) ("The sentencing court may impose sentencing enhancements belatedly suggested by the Government and not contained in the PSR, provided the defendant is afforded an adequate opportunity to respond to the Government's late submission and any revision of the PSR.") (internal citation omitted). We hold that the government's arguments for the enhancements were not foreclosed.

## B. *The Plea Agreement*

Leach argues that the government's advocacy for the § 4B1.5(a) enhancement breached the plea agreement. The government stipulated that Leach's base offense level was 24, but the enhancement, if applied, would have increased Leach's offense level to 34. Leach further contends that because the plea agreement stipulated to a two-level enhancement for use of a computer, pursuant to § 2G2.2(b)(3)(A), without any reference to § 4B1.5 or any other enhancement, the agreement necessarily implied that no other enhancements would be applied.

Issues regarding the interpretation and enforcement of a plea agreement are reviewed de novo. *United States v. Martinez-Noriega*, 418 F.3d 809, 811 (8th Cir. 2005); *United States v. DeWitt*, 366 F.3d 667, 669 (8th Cir. 2004). "Plea agreements are contractual in nature, and should be interpreted according to general contract principles." *DeWitt*, 366 F.3d at 669.

Leach asserts that our decision in *DeWitt*, compels us to find a breach of the plea agreement in this case. We disagree. In *DeWitt*, the government and the defendant stipulated to a base offense level and a specific drug quantity in a plea agreement. *Id.* at 668. After the plea agreement was accepted by the court at a change of plea hearing,

the probation office prepared a PSR suggesting that DeWitt's relevant conduct made her accountable for additional drug amounts and recommended a higher base offense level. *Id.* at 668–69. At the sentencing hearing, the government, on its own initiative, sought to introduce evidence to establish the higher drug quantity set forth in the PSR, and DeWitt objected, claiming that the government had stipulated in the plea agreement to the base offense level and the drug quantity. *Id.* at 669. The district court allowed the evidence and subsequently found DeWitt accountable for the drug quantity recommended in the PSR and adopted the PSR's recommended base offense level. *Id.*

On appeal, we reversed, holding that the government breached the plea agreement when it introduced evidence at sentencing to attribute a greater drug quantity to the defendant when it had previously stipulated to the total drug quantity in the plea agreement. *Id.* at 670–72. Although the plea agreement entitled the government to offer evidence of uncharged relevant conduct, we ruled that such a general provision could not be read to override the specific provision to recommend only a certain drug quantity for Guidelines calculation purposes. *Id.* at 670. We noted that when stipulations in the plea agreement differ from recommendations in a PSR, there is no breach of the plea agreement if the court requests the parties to provide evidence or argument on the issue. *Id.* at 671. But, we ultimately concluded that "[w]here the government stipulates to a drug quantity and a base offense level, it may not then initiate an effort at the sentencing hearing to obtain a greater sentence, even if the government has come to believe that the stipulation was made in error." *Id.* at 671–72.

Although there are certainly some similarities between this case and *DeWitt*, we believe that the instant case is controlled by our decision in *Martinez-Noriega*. In *Martinez-Noriega*, the plea agreement stipulated that the defendant's base offense level was 20, pursuant to § 2D1.1. 418 F.3d at 810. The plea agreement in *Martinez-Noriega*, like the plea agreement here, made no agreement regarding the defendant's

-8-

criminal history category under Chapter Four of the Guidelines and made no reference to any potential adjustment to his offense level under Chapter Four. *Id.* at 810–11. Prior to the sentencing hearing, the probation office prepared a PSR, which recommended that Martinez-Noriega be assessed an offense level of 32, pursuant to the career offender guideline, § 4B1.1(b)(C), because he had two prior felony drug convictions. *Id.* at 811. Martinez-Noriega objected, arguing that because his plea agreement stipulated that his base offense level was 20 and did not refer to § 4B1.1, the court was precluded from applying the career offender guideline. *Id.* The district court disagreed and sentenced Martinez-Noriega as a career offender. *Id.*

On appeal, Martinez-Noreiga argued that application of the career offender enhancement would render his base-offense-level stipulation under § 2D1.1 meaningless. He contended the existence of the specific stipulation concerning the base offense level necessarily implied that his offense level would be computed without regard to § 4B1.1. *Id.* "We reject[ed] Martinez-Noriega's argument because we [found] it inconsistent with the structure of the sentencing guidelines." *Id.* In reaching this conclusion, we explained:

> The "Application Instructions" for use of the guidelines set forth nine sequential steps to be followed by the sentencing court in applying the provisions of the guidelines manual. The second step calls for the court to "[d]etermine the base offense level . . . contained in the particular guideline in Chapter Two." USSG § 1B1.1(b). The next three steps direct the court to apply adjustments from Chapter Three of the guidelines. The sixth step then states that the court should "[d]etermine the defendant's criminal history category as specified in Part A of Chapter Four," and "*[d]etermine from Part B of Chapter Four any other applicable adjustments.*" USSG § 1B1.1(f). These adjustments from Part B include the enhanced offense levels for career offenders pursuant to USSG § 4B1.1.

*Id.* at 812. (emphasis in original).

We further explained that "[t]he guidelines contemplate . . . that even when a defendant ultimately is subject to [a Chapter Four adjustment], the court will first compute the defendant's 'base offense level' under Chapter Two of the guidelines." *Id.* Thus, by stipulating to a base offense level, "[the] defendant has solidified where he will start in Chapter Two of the guidelines, but he has not protected himself against adjustments in Chapter Four." *Id.* at 813. Accordingly, we held that the district court did not err in applying the career-offender Guideline to Martinez-Noriega because the agreement only resolved the defendant's base offense level under Chapter Two, but did not resolve any issues with respect to Chapter Four. *Id.*

Like the agreement in *Martinez-Noriega*, Leach's plea agreement only stipulated to his base offense level under Chapter Two of the Guidelines. Although the parties were free to do so, they did not address possible adjustments "from Part B of Chapter Four," which includes the enhanced offense levels for repeat and dangerous sex offenders against minors pursuant to U.S.S.G. § 4B1.5. Thus, in contrast to *DeWitt*, the government here did not advocate for anything inconsistent with the stipulations of the plea agreement; it advocated for something that was not resolved by the plea agreement. Paragraph 11 of Leach's plea agreement stated that "[t]he parties understand, acknowledge and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed" and that "[a]s to any other Guidelines issues, the parties are free to advocate their respective positions at sentencing." We conclude, therefore, that the government was free to advocate for the § 4B1.5(a) enhancement because it was an issue that had not been agreed to or specifically listed in the agreement. Accordingly, we hold that the government did not breach the plea agreement.

## C. *U.S.S.G. § 4B1.5(a)*

Having concluded that the government was not precluded from arguing in favor of the § 4B1.5 enhancement, we must now determine whether that section should have been applied. Section 4B1.5, entitled "Repeat and Dangerous Sex Offender Against Minors," states under subsection (a) that:

(a) In any case in which the defendant's instant offense of conviction is a covered sex crime, § 4B1.1 (Career Offender) does not apply, and the defendant committed the instant offense of conviction subsequent to sustaining at least one sex offense conviction:

> (1) The offense level shall be the greater of:
> > (A) the offense level determined under Chapters Two and Three; or
>
> > (B) the offense level from the table below decreased by the number of levels corresponding to any applicable adjustment from § 3E1.1 (Acceptance of Responsibility):
>
> Offense Statutory Maximum Offense Level
> > (i) Life .................................................................. 37
> > (ii) 25 years or more ............................................... 34
> > (iii) 20 years or more, but less than 25 years.......... 32
> > (iv) 15 years or more, but less than 20 years.......... 29
> > (v) 10 years or more, but less than 15 years........... 24
> > (vi) 5 years or more, but less than 10 years ............17
> > (vii) More than 1 year, but less than 5 years...........12.
>
> (2) The criminal history category shall be the greater of: (A) the criminal history category determined under Chapter Four, Part A (Criminal History); or (B) criminal history Category V.

U.S.S.G. § 4B1.5(a).[4]

Put simply, Leach would be subject to the § 4B1.5(a) enhancement if: (1) his "instant offense of conviction is a covered sex crime;" (2) the career offender

_____

[4]The plea agreement stipulated that the applicable Guidelines Manual was "the one that took effect on November 5, 2004." Section 4B1.5(a) remains unchanged in the current edition of the Guidelines Manual.

enhancement (§ 4B1.1) does not apply to him; and (3) he "committed the instant offense of conviction subsequent to sustaining at least one sex offense conviction." *Id.* Leach unquestionably meets the first two prerequisites of § 4B1.5(a). His "instant offense of conviction"—knowingly using a facility of interstate commerce to attempt to entice a minor to engage in sexual activity—qualifies as a "covered sex crime" as that term is defined in Application Note 2 to § 4B1.5.[5] More specifically, the offense was perpetrated against a minor[6] and fell under 18 U.S.C. § 2422(b), which is under Chapter 117 of Title 18 of the United States Code and thus constituting a "covered sex crime." *See United States v. Blazek*, 431 F.3d 1104, 1110 (8th Cir. 2005) (upholding the application of § 4B1.5(a) enhancement and ruling that a conviction for attempted enticement of a minor under 18 U.S.C. § 2422(b) is a "covered sex crime" for purposes of the enhancement, even if the intended victim was an undercover officer and not an actual minor). Additionally, § 4B1.1, the career offender enhancement,

---

[5]Application Note 2 of § 4B1.5, entitled "Covered Sex Crime as Instant Offense of Conviction," states:

> For purposes of this guideline, the instant offense of conviction must be a covered sex crime, i.e.: (A) an offense, perpetrated against a minor, under (i) chapter 109A of title 18, United States Code; (ii) chapter 110 of such title, not including trafficking in, receipt of, or possession of, child pornography, or a recordkeeping offense; (iii) chapter 117 of such title, not including transmitting information about a minor or filing a factual statement about an alien individual; or (B) an attempt or conspiracy to commit any offense described in subdivisions (A)(i) through (iii) of this note.

[6]Although Application Note 1 to § 4B1.5, defines "minor" as a person under the age of 18 and defines "minor victim" to include "an undercover law enforcement officer who represented to the defendant that the officer was a minor," this court has specifically held that a conviction for attempted enticement of a minor under 18 U.S.C. § 2422(b)—Leach's instant offense of conviction—is a "covered sex crime" for purposes of § 4B1.5 even though the intended victim was in fact an undercover law enforcement officer. *United States v. Blazek*, 431 F.3d 1104, 1110 (8th Cir. 2005).

-12-

does not apply to Leach because he did not have at least two prior felony convictions of either a crime of violence or a controlled substance offense. Therefore, § 4B1.5(a) would apply to Leach if he "committed the instant offense of conviction subsequent to sustaining at least one sex offense conviction." § 4B1.5(a).

It is undisputed that Leach committed the instant offense of conviction after he pleaded guilty to the Kansas offense—attempted aggravated criminal sodomy. However, sentencing on Leach's Kansas offense was pending when the district court sentenced him on the instant offense. Thus, no final judgment of conviction had been entered on the Kansas offense. Leach contends, therefore, that the Kansas offense cannot be counted as a prior "sex offense conviction" for purposes of § 4B1.5(a) because the section does not define whether the term "conviction" requires the defendant to have been sentenced pursuant to the conviction (a final judgment of conviction) or whether a "conviction" only requires that the defendant was adjudicated guilty of the offense, whether by the court, jury, or accepted plea of guilty or nolo contendere. If the prior conviction under § 4B1.5(a) only requires that the defendant have been found guilty of the offense, the enhancement would apply to Leach. However, if the prior "conviction" requires that the defendant have been sentenced for the offense and a final judgment of conviction entered, then § 4B1.5(a) would not apply to him.

The district court ruled that the term "conviction" in § 4B1.5(a) was ambiguous. The court noted that the term is not defined in § 4B1.5(a), relying on language from the Supreme Court's decision in *United States v. Deal*, 508 U.S. 129, 131–32 (1993) ("It is certainly correct that the word 'conviction' can mean either the finding of guilt or the entry of a final judgment on that finding," which "includes both the adjudication of guilt and the sentence."). The district court considered that the context of § 4B1.5(a) did not clear up the ambiguity of the term "conviction," so it applied the rule of lenity and found the Kansas offense could not count as a prior sex conviction under the section.

We disagree with the district court's interpretation and find that the context of § 4B1.5—much like the context of the statute at issue in *Deal*—makes "it unambiguous that 'conviction' refers to the finding of guilt by a judge or jury that necessarily precedes the entry of a final judgment of conviction." *See id.* at 132. The first clause of § 4B1.5(a) speaks of "the instant offense of conviction," which is the crime for which the defendant was now to be sentenced, and for which the enhancement would apply if the defendant has a previous sex offense conviction. *See* § 4B1.5(a). The term "conviction" in § 4B1.5(a) therefore cannot mean a judgment of conviction. Clearly, the term conviction refers to a conviction without an entry of final judgment in the phrase "instant offense of conviction" because the sentencing was not yet complete. The term should be read to have the same meaning when used later in the same sentence unless otherwise stated or implied.[7] We do not read § 4B1.5(a) as requiring the formal entry of a judgment of conviction before a defendant is considered convicted for the provision's enhancements to apply. Any other reading is at best strained. *See Deal*, 508 U.S. at 132 (finding that if "conviction" in § 924(c)(1) meant "judgment of conviction," then "the provision would be incoherent, prescribing that a sentence which has already been imposed . . . shall be 5 or 20 years longer than it was").

Our reading of the term "conviction" in § 4B1.5(a) as only requiring an adjudication of guilt is confirmed by the "Background" section of § 4B1.5, which states:

---

[7]Essentially, Leach argues for one definition of "conviction" the first time it appears in § 4B1.5(a)—an adjudication of guilt—and a different definition for "conviction" the second time the term is used—a judgment of conviction requiring a sentence to be imposed. This result would go against one of the basic rules of statutory interpretation—that identical words used in different parts of the same act or statute are intended to have the same meaning. *See Comm'r of Internal Revenue v. Lundy*, 516 U.S. 235, 250 (1996) ("the normal rule of statutory construction [is] that identical words used in different parts of the same act are intended to have the same meaning.").

*The guideline is intended to provide lengthy incarceration for offenders who commit sex offenses against minors and who present a continuing danger to the public.* It applies to offenders whose instant offense of conviction is a sex offense committed against a minor victim. The relevant criminal provisions provide for *increased statutory maximum penalties for repeat sex offenders* and make those increased statutory maximum penalties available if the defendant previously was convicted of any of several federal and state sex offenses (see 18 U.S.C. 2247, 2426). In addition, section 632 of Public Law 102-141 and section 505 of Public Law 105-314 directed the Commission to ensure lengthy incarceration for offenders who engage in a pattern of activity involving the sexual abuse or exploitation of minors. Section 401(i)(1)(A) of Public Law 108-21 directly amended Application Note 4(b)(i), effective April 30, 2003.

U.S.S.G. § 4B1.5 cmt. Background (Emphasis added).

As stated above, § 4B1.5 "is intended to provide lengthy incarceration for offenders who commit sex offenses against minors and who present a continuing danger to the public," and to increase the maximum penalties for "repeat sex offenders." Requiring a "repeat sex offender," such as Leach, to have been sentenced for a prior sex offense against a minor, when he has already been adjudicated guilty of the offense does nothing to effectuate the stated intent of the enhancement.

Our decision to apply the § 4B1.5(a) enhancement to Leach is further confirmed by commentary note 3 of § 4B1.5 and its relation to the plea agreement entered into by Leach and the government. Although § 4B1.5 does not define the term "conviction," commentary note 3 to § 4B1.5 defines the phrase "sex offense conviction" as meaning: "any offense described in 18 U.S.C. 2426(b)(1)(A) or (B), if the offense was perpetrated against a minor; and (II) does not include trafficking in, receipt of, or possession of, child pornography. . . ." U.S.S.G. § 4B1.5 cmt. n. 3.

Section 2426(b), the referenced statute in commentary note 3 to § 4B1.5 states:

> (a) Maximum term of imprisonment.--The maximum term of imprisonment for a violation of this chapter *after a prior sex offense conviction* shall be twice the term of imprisonment otherwise provided by this chapter, unless section 3559(e) applies.
>
> (b) Definitions.--In this section--
>> (1) the term *"prior sex offense conviction" means a conviction for an offense--*
>>> (A) under this chapter, chapter 109A, or chapter 110; or
>>> (B) *under State law for an offense consisting of conduct that would have been an offense under a chapter referred to in paragraph (1) if the conduct had occurred within the special maritime and territorial jurisdiction of the United States*;
>>>>> . . . .

18 U.S.C. § 2426 (emphasis added).

Although this section does not explicitly state whether a "conviction" requires sentencing to have occurred, subsection (a) of § 2426 doubles a defendant's maximum term of imprisonment if the defendant had a prior "sex offense conviction" against a minor. 18 U.S.C. § 2462. In the plea agreement entered into in this case, Leach acknowledged, in the "Statutory Penalties" section of his plea agreement, that upon pleading guilty to Count One of the indictment, his maximum sentence was 60 years "pursuant to 18 U.S.C. § 2426(a) *because said offense occurred after [Leach] had a prior sex offense conviction . . . .*" Plea Agreement ¶ 5 (emphasis added). Because the phrase "sex offense conviction" in § 4B1.5(a) is defined as "any offense described in 18 U.S.C. 2426(b)(1)(A) or (B), if the offense was perpetrated against a minor" and Leach stipulated in his plea agreement that his maximum sentence would be doubled to 60 years under 18 U.S.C. § 2426(a) because the Kansas offense qualified as a prior "sex offense conviction" against a minor, Leach essentially stipulated in the plea

-16-

agreement that the Kansas offense was a prior "sex offense conviction" under § 2426(b)(1)(A).

Because we find that § 4B1.5(a) applies to Leach, we need not address the merits of the district court's decision regarding the inapplicability of § 4B1.5(b), as subsection (b) can only apply if subsection (a) is inapplicable. U.S.S.G. § 4B1.5(b).

### III. *Conclusion*

Accordingly, we vacate Leach's sentence and remand the case for resentencing in accordance with this decision.

_____