RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0106p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 13-3958

WILLIAM M. BABCOCK,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:13-cr-00048-1—Edmund A. Sargus, Jr., District Judge.

Argued: March 14, 2014

Decided and Filed: May 23, 2014

Before: MERRITT, MOORE, and CLAY, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** Kevin M. Schad, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cincinnati, Ohio, for Appellant. Benjamin C. Glassman, UNITED STATES ATTORNEY'S OFFICE, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Kevin M. Schad, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cincinnati, Ohio, for Appellant. Mary Beth Young, Heather A. Hill, UNITED STATES ATTORNEY'S OFFICE, Cincinnati, Ohio, for Appellee.

─────────────────

## OPINION

─────────────────

CLAY, Circuit Judge. Defendant William Babcock appeals the sentence of 190 months' imprisonment and lifetime supervised release imposed by the district court after Defendant pleaded guilty to one count of attempting to entice a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b). Defendant challenges the district court's Guidelines

1

calculation—specifically, its application of the repeat child sex offender enhancement of U.S.S.G. § 4B1.5(a)—and asserts that imposing a life term of supervised release was procedurally unreasonable.  For the reasons that follow, we **AFFIRM**.

## BACKGROUND

On June 12, 2012, officers of the Internet Crimes Against Children task force in Franklin County, Ohio were browsing Craigslist for suspicious personal ads.  The officers saw two ads in which the poster offered money for sex with someone of any age.  The poster was Defendant, a registered sex offender living in Newark, Ohio.  One of the officers responded to Defendant's ads by e-mail, adopting the persona of a fourteen-year-old girl named Amber.  "Amber" told Defendant her age, and Defendant told Amber that it was not a problem for him.  Defendant then steered the discussion towards sexual topics, eventually arranging a liaison for June 14, 2012.  Defendant arrived at the pre-arranged meeting spot in Columbus, Ohio, and was promptly placed under arrest.  In February 2013, Defendant pleaded guilty to one count of attempting to entice a minor to engage in sexual activity.  18 U.S.C. § 2422(b).

The sentencing proceeding focused heavily on Defendant's troubled past.  Defendant was the victim of physical and sexual abuse as a child, and claimed to have been diagnosed with schizophrenia and bipolar disorder at a young age.  His father was absent and his mother struggled with substance abuse.  In addition, Defendant had been in and out of the criminal justice system almost continually since the age of twelve.  Defendant had four juvenile adjudications for breaking and entering, assault, theft, and burglary.  He went on to have seventeen adult criminal convictions, mostly related to narcotics.

Three convictions warranted special attention from the district court and the parties.  First, in April 1999, Defendant pleaded no contest in Ohio state court to three counts of corruption of a minor, a fourth-degree felony.  *See* Ohio Rev. Code § 2907.04.  The prosecution alleged that Defendant had engaged in consensual sex with two girls, aged fourteen and fifteen, between June 1997 and April 1998.  Defendant entered an *Alford* plea to these charges, meaning he admitted no misconduct.  *See North Carolina v. Alford*, 400 U.S. 25 (1970).  Second, in August 2001, Defendant was sentenced to five years of probation by an Ohio state court for disseminating information harmful to juveniles—specifically, providing a pornographic video to

an eight-year-old girl.   Third, in January 2009, Defendant was sentenced to six months' confinement for failing to register or verify his current address as required by his status as a sex offender.

Defendant's offense and criminal history resulted in an advisory Guidelines sentencing range of 120–150 months.   However, the probation office concluded that the repeat child sex offender enhancement of U.S.S.G. § 4B1.5(a) should apply.   This enhancement has three elements:  (1) the defendant's offense must be a "covered sex crime," (2) the defendant cannot be a career offender under § 4B1.1, and (3) "the defendant [must have] committed the instant offense of conviction subsequent to sustaining at least one sex offense conviction."   U.S.S.G. § 4B1.5(a).   Defendant's offense, a violation of 18 U.S.C. § 2422(b), constitutes a covered sex crime.   *See* U.S.S.G. § 4B1.5 application note 2(A)(iii), (B).   Defendant was not classified as a career offender.   And the probation office concluded that Defendant's 1999 plea to corruption of a minor counted as the prior sex offense conviction.   Applying this enhancement to Defendant increased his Guidelines sentencing range to 235–293 months.

Defendant did not object to the probation office's Guidelines calculation.   But at sentencing, Defendant argued that the factors of 18 U.S.C. § 3553(a) counseled a significantly below-Guidelines sentence.   Defendant stressed that but for the § 4B1.5(a) enhancement, Defendant's Guidelines range would be 120–150 months, and that the enhancement applied only because of a 15-year-old conviction where Defendant did not admit misconduct.   Based on these factors, Defendant requested a sentence of 120 months—the mandatory minimum—followed by 120 months of supervised release.   The government requested a 264-month sentence followed by a life term of supervised release.

After hearing both parties, the district court explained the sentence it would impose.   The court noted that there was no legal dispute concerning the Guidelines calculation and the resulting sentencing range.   The court was concerned that the conviction triggering the § 4B1.5(a) enhancement was old, but concluded that a prior adult conviction could trigger the enhancement regardless of when it occurred.   The court went on to consider the § 3553(a) factors.   The offense conduct was very serious, the court concluded, even though the intended victim happened to be an undercover police officer.   Defendant suffered a troubled upbringing,

but the court deemed this factor to be less important since danger to the public was a significant factor. Furthermore, Defendant's criminal history was extensive and revealed "an escalating continuous pattern of illegal criminal behavior." (R. 48, Sentencing Tr., at 165.) The court acknowledged the difficulties in determining future danger, but thought there were reasons to be concerned about Defendant's behavior after his release, particularly since Defendant had committed at least one other crime involving a minor. After reiterating its concern about the vintage of the conviction that triggered the § 4B1.5(a) enhancement, the court sentenced Defendant to 190 months' imprisonment and a life term of supervised release.

## DISCUSSION

On appeal, Defendant challenges the application of the § 4B1.5(a) enhancement and asserts that the district court's imposition of a life term of supervised release was procedurally unreasonable. We review a district court's sentence for procedural and substantive reasonableness, applying the abuse of discretion standard. *See Gall v. United States,* 552 U.S. 38, 51 (2007). Our procedural reasonableness review includes determining whether the district court properly calculated a defendant's Guidelines sentencing range. *See United States v. Seymour*, 739 F.3d 923, 929 (6th Cir. 2014). We also review the duration of supervised release for abuse of discretion. *See United States v. Stall*, 581 F.3d 276, 283 (6th Cir. 2009).

However, Defendant concedes that he failed to object in the district court to either the § 4B1.5(a) enhancement or the length of supervised release. We thus review for plain error. *See United States v. Stock*, 685 F.3d 621, 627 (6th Cir. 2012); *United States v. Inman*, 666 F.3d 1001, 1003 (6th Cir. 2012) (per curiam). "Under the plain error standard of review, the defendant must show (1) there is error; (2) the error was clear or obvious rather than subject to reasonable dispute; (3) it affected the defendant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) it seriously affected the fairness, integrity or public reputation of judicial proceedings." *United States v. Massey*, 663 F.3d 852, 856 (6th Cir. 2011) (quotation marks omitted). Applying this more deferential standard of review, we turn to Defendant's two grounds for appeal.

## I.      THE § 4B1.5(A) ENHANCEMENT

Section 4B1.5(a) imposes an increased offense level and a criminal history category of at least V on repeat child sex offenders.  As stated above, it applies when three criteria are met: (1) the defendant's offense of conviction is a "covered sex crime," (2) the defendant is not a career offender, and (3) "the defendant committed the instant offense of conviction subsequent to sustaining at least one sex offense conviction."  U.S.S.G. § 4B1.5(a).  Defendant concedes that the first two elements are satisfied.  He further does not dispute that the crime he pleaded guilty to in 1999, corruption of a minor in violation of Ohio Rev. Code § 2907.04, can qualify as a "sex offense conviction."  *See* U.S.S.G. § 4B1.5 application note 3(A)(ii).  However, Defendant argues that he did not commit the instant offense "subsequent to" the 1999 conviction, since that conviction occurred too long ago.

In construing the Guidelines, we employ the traditional tools of statutory interpretation, beginning with the text's plain meaning.  *See United States v. Jackson*, 635 F.3d 205, 209 (6th Cir. 2011).  Section 4B1.5(a) and its application notes do not explicitly place a limitations period on otherwise-qualifying sex offense convictions.  The plain meaning of the term "subsequent to" suggests that no such limitation exists.  "Subsequent to" ordinarily means "at a time later or more recent  than; since," Webster's Third New Int'l Dictionary 2279 (2002), or "[f]ollowing on from; after."  Oxford English Dictionary (3d ed. 2012), *available at* http://www.oed.com/view/Entry/192976.  These dictionary definitions do not contain any time limitation—once an event occurs, all later events happen "subsequent to" the former.

Defendant suggests, however, that we must read § 4B1.5(a) *in pari materia* with the time limitations of § 4A1.2, under which certain sentences more than ten or fifteen years old do not count when tallying a defendant's criminal history category.  Since the 1999 conviction did not add points to his criminal history category, Defendant argues that it should not be able to trigger the § 4B1.5(a) enhancement. We disagree.  Defendant cannot support his argument that the time rules from § 4A1.2 apply to § 4B1.5 or to Chapter 4 of the Guidelines as a whole.  In fact, the Guidelines show that just the opposite is true.  Application note 3 to § 4B1.2, the section that provides definitions for the career offender Guideline, stipulates that "[t]he provisions of § 4A1.2 (Definitions and Instructions for Computing Criminal History) are applicable to the counting of

convictions under § 4B1.1." *See also United States v. Baker*, 559 F.3d 443, 450 (6th Cir. 2009). If the definitions of § 4A1.2 applied universally to Chapter 4 of the Guidelines, this application note would be entirely superfluous.[1]  *See Smith v. United States*, 508 U.S. 223, 231 (1993).

The intent undergirding § 4B1.5(a) further supports our interpretation.  The background to § 4B1.5 states that the Guideline "applies to offenders whose instant offense of conviction is a sex offense committed against a minor and who present a continuing danger to the public. . . . [Congress] directed the Commission to ensure lengthy incarceration for offenders who engage in a pattern of activity involving the sexual abuse or exploitation of minors." U.S.S.G. § 4B1.5 background.  The Commission emphasized this harsh purpose when it enacted § 4B1.5:  "This guideline provision effectuates the Commission's and Congress's intent to punish repeat child sex offenders severely."  U.S.S.G. app. C, amend. 615.  In other words, the expressed purpose of § 4B1.5(a) contains no hint of temporal limitations, and an explicit directive to sentence repeat child sex offenders sternly.

Defendant's reliance on *United States v. Nielsen*, 694 F.3d 1032 (9th Cir. 2012), does not salvage his argument.  This case addressed whether juvenile adjudications can count as prior convictions under § 4B1.5(a).  *See Nielson*, 694 F.3d at 1037–38.  The Ninth Circuit held they cannot.  *See id.*  The court noted that the Guidelines explicitly state when they intend to encompass juvenile adjudications, and when they do, the Guidelines do not refer to these adjudications with the term "conviction."  *See id.*  Furthermore, the Ninth Circuit's interpretation "comport[ed] with the rule of lenity."  *Id.* at 1038.  By contrast, the case before us now does not concern juvenile adjudications, nor does it implicate the type of clear statement rule that supported the Ninth Circuit's ruling.[2]

---

[1]Defendant's citation to *United States v. Graham*, 622 F.3d 445 (6th Cir. 2010), is entirely off-base.  The question before us in *Graham* was "whether a 'prior conviction' stemming from a juvenile action, treated as adult for prosecution and sentencing purposes under state law, that qualifies as a 'felony drug offense' under the [21 U.S.C.] § 802(44) definition qualifies as a 'prior conviction' for [21 U.S.C.] § 841(b)(1)(A) mandatory minimum purposes."  *Id.* at 456.  We held that the district court had properly considered such a conviction when determining which mandatory minimum applied.  *See id.* at 457.  En route, we rejected the defendant's analogy to the time limitations of § 4A1.2:  "Unlike the Guidelines, § 841(b)(1)(A) does not include a temporal limit."  *Id.* at 461.  Defendant claims this statement shows that the time rules from § 4A1.2 apply to Chapter 4 of the Guidelines as a whole.  *Graham* says no such thing.

[2]Defendant does not argue that an *Alford* plea cannot constitute a prior sex offense conviction under § 4B1.5(a).  As a result, we assume that the *Alford* plea does not affect the application of the enhancement.  *Cf.*

The Guidelines' plain language, context, and intent all point to a single conclusion—an adult sex offense conviction can trigger the § 4B1.5(a) enhancement regardless of when it occurred. Defendant is not a career offender, and committed the instant sex crime "subsequent to sustaining at least one sex offense conviction." U.S.S.G. § 4B1.5(a). The district court therefore did not err when it applied this enhancement. Of course, our conclusion does not deprive district courts of their discretion to consider the vintage of a prior sex offense conviction when determining the appropriate sentence. The district court in this case sentenced Defendant to a prison term significantly below the advisory Guidelines sentencing range, in part because the prior conviction occurred more than ten years before Defendant committed the instant offense. Sentencing judges have the discretion to emulate this approach in the future.

## II.        THE LIFE TERM OF SUPERVISED RELEASE

Defendant next argues that the district court committed procedural error when it imposed a life term of supervised release. "Congress insists that lifetime supervision be available to courts in sentencing sexual offenders." *United States v. Kennedy*, 499 F.3d 547, 553 (6th Cir. 2007). The district court in this case had to sentence Defendant to at least five years of supervised release, and was permitted to impose a life term. *See* 18 U.S.C. § 3583(k). The Guidelines urge district courts to impose the maximum term available for sex offenders. *See* U.S.S.G. § 5D1.2(b). Section 4B1.5 carries its own presumption that a life term of supervised release is appropriate. *See* U.S.S.G. § 4B1.5 application note 5(A). It was the job of the district court to consider these Guidelines and the relevant sentencing factors from 18 U.S.C. § 3553(a) to determine what duration of supervised release was appropriate. *See* 18 U.S.C. § 3583(c).

Although the Guidelines counsel a lifetime of supervision, the district court still had to explain why it chose this term. *See United States v. Inman*, 666 F.3d 1001, 1004 (6th Cir. 2012) (per curiam). "Without proper analysis and an explanation for the length of the supervised release term chosen, we cannot review the reasonableness of the sentence as imposed." *Id.* The district court did not explicitly give its reasoning for selecting a life term, but the court did fully explain why it concluded that 190 months of incarceration was appropriate. "In outlining its

---

*United States v. Leach*, 491 F.3d 858, 867 (8th Cir. 2007) (holding that "the term 'conviction' in § 4B1.5(a) [] only requir[es] an adjudication of guilt").

reasons for imposing the sentence of incarceration . . . the district court was also outlining the reasons supporting the [term] of supervised release," even though the court did not do so explicitly. *United States v. Zobel*, 696 F.3d 558, 572 (6th Cir. 2012).

But Defendant contends that our decision in *Inman* requires us to vacate his term of supervised release. The defendant in *Inman* was sentenced to 57 months' imprisonment after pleading guilty to possession of child pornography. *See Inman*, 666 F.3d at 1003. Although the defendant and the government agreed that a ten-year term of supervised release was appropriate, the court ordered lifetime supervision without explanation. *See id.* at 1003–04. The court also imposed several onerous conditions of supervised release addressing substance abuse, electronics the defendant could own, and financial information the defendant would be required to hand over to his probation officer. *See id.* at 1004–06. Again, the court did not explain the need for these conditions and we found little support for them in the record. *See id.* Considering all of these factors, we held that the district court had committed plain error, which required us to vacate the sentence and remand for resentencing. *See id.* at 1006–07.

*Inman* does not compel the same result here. Defendant pleaded guilty to attempting to entice a minor to engage in sexual conduct, not possession of child pornography. Defendant's crime and criminal history warranted the repeat child sex offender enhancement—not at issue in *Inman*—which carries its own recommendation of lifetime supervision. Section 4B1.5(a) only applies where the defendant has committed more than one sex offense—that is, where the defendant has already proved to be a continuing risk to the community. Unlike in *Inman*, the government in this case requested a life term of supervised release. And unlike in *Inman*, Defendant does not challenge any onerous or unusual conditions of supervised release. Under these circumstances, we cannot conclude that "the length of supervised release . . . [is] likely more severe than if the district court had followed the correct procedures." *Id.* at 1007. Thus Defendant cannot show that the district court's failure to explicitly lay out the reasoning supporting a life term of supervised release was plain error.

**CONCLUSION**

For the foregoing reasons, we **AFFRIM** the district court in full.