# United States Court of Appeals
### For the Eighth Circuit

_____

No. 13-3572

_____

United States of America

*Plaintiff - Appellee*

v.

Rene Fernandez Noriega

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: June 13, 2014
Filed: July 30, 2014

_____

Before LOKEN, BRIGHT, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Rene Fernandez Noriega challenges the district court's[1] imposition of a 210-month term of incarceration following his guilty plea. Noriega argues that he is

_____

[1]The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa.

entitled to resentencing because the Government breached a provision of the written plea agreement between the parties. We affirm.

Noriega pled guilty to conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846. In paragraph 8 of the plea agreement, Noriega admitted several facts, including the following:

> Beginning on a date unknown, but at least as early as February 2013, Defendant owned Fermont Trucking in San Luis, Arizona, and used that company's semi-trailer truck to knowingly and voluntarily conceal and transport a large quantity of controlled substance throughout the United States in exchange for U.S. currency.

Noriega also specifically admitted to delivering approximately twenty pounds of methamphetamine on February 8, 2013. In paragraph 11 of the agreement, the parties also recognized the sentencing guidelines factors that could apply:

> The Sentencing Guidelines establish a sentencing range based upon factors determined to be present in the case, which include, but are not limited to the following:
>
> (a) the nature of the offense to which Defendant is pleading guilty;
>
> (b) the quantity of drugs involved, with the parties stipulating that it was reasonably foreseeable to Defendant that the conspiracy involved 5 kilograms of a mixture and substance containing methamphetamine, for a base offense level of 36 pursuant to USSG § 2D1.1;
>
> (c) Defendant's role in the offense;
> * * *

Although the parties stipulated to a drug quantity and associated base offense level, the plea agreement did not contain any stipulation regarding a possible guideline enhancement based on Noriega's role in the offense. *See* USSG § 3B1.1. Paragraph 14 of the plea agreement expressly allowed the parties to "make whatever comment and evidentiary offer they deem appropriate at the time of sentencing and entry of plea, provided that such offer or comment does not violate any other provision of this Plea Agreement."

The United States Probation Office prepared and filed a presentence investigation report ("PSR"), which recommended a base offense level of 38 based on its conclusion that the conspiracy involved multiple drug transactions with several controlled substances that, when aggregated, resulted in a drug quantity sufficient for a base offense level of 38. The PSR also contained a recommendation for a four-level enhancement for Noriega's role as an organizer and leader of the conspiracy under § 3B1.1(a). Noriega filed objections to the PSR, in which he challenged the factual basis for the proposed base offense level and role enhancement as involving drug quantities in excess of the amount agreed to by the Government in paragraph 11(b) of the plea agreement.

At sentencing, the Government emphasized that "although the drug quantity shows a base offense level of 38 [in the PSR], the Government has agreed to abide by its stipulation of the base offense level of 36 in this case." The district court agreed to adopt the stipulation of the parties in determining Noriega's base offense level, observing that "[t]he parties have stipulated to a Level 36 for base offense level for the drug quantity here, and that's not going to change." The Government, however, sought to introduce additional evidence supporting the PSR's proposed four-level role-in-the-offense enhancement. This evidence included the testimony of a special agent with the Drug Enforcement Agency ("DEA") and a cooperating witness. Incidental to their testimony concerning Noriega's role, the testimony also described Noriega's involvement in several drug transactions with aggregate drug

quantities in excess of the amount agreed upon in paragraph 11(b) for purposes of establishing the base offense level. Noriega objected to this evidence, arguing that—based on the drug-quantity stipulation in paragraph 11(b)—evidence of relevant conduct at sentencing was limited only to the drug quantities that were part of the February 8, 2013 delivery. The district court overruled this objection, explaining that "[t]he stipulation in the plea agreement as to base offense level does not drive for every other purpose the determination of relevant conduct." Based on the testimony of the DEA agent and the cooperating witness, the district court found the base offense level to be 36, applied the four-level role enhancement, determined an advisory sentencing guidelines range of 210 to 262 months, and sentenced Noriega to 210 months' imprisonment. This appeal followed.

"We review questions regarding the interpretation and enforcement of plea agreements de novo." *United States v. Mosley*, 505 F.3d 804, 808 (8th Cir. 2007). Where, as here, the written plea agreement has been accepted by the district court, "we generally interpret the meaning of the terms in the agreement according to basic principles of contract law." *Id.*

In a case of jointly undertaken criminal activity, "relevant conduct" is defined in the Guidelines as "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant" as well as "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." USSG § 1B1.3(a)(1)(A)-(B). Noriega argues that the drug-quantity stipulation in paragraph 11(b) of the plea agreement constituted the full scope of his relevant conduct and that by introducing evidence of additional drug quantities incidental to its evidence of Noriega's role in the conspiracy, the Government breached the plea agreement.

This argument, however, impermissibly seeks to expand the drug-quantity stipulation to bind the Government on issues of relevant conduct and Noriega's role in the offense in a manner not supported by the plain meaning of the plea agreement's text. Paragraph 11 of the plea agreement simply recites some of the factors relevant to the guidelines calculation, including "the quantity of drugs involved, with the parties stipulating that it was reasonably foreseeable to Defendant that the conspiracy involved 5 kilograms of a mixture and substance containing methamphetamine, for a base offense level of 36 pursuant to USSG § 2D1.1." Paragraph 11(b) merely constitutes an agreement between the parties as to the base offense level and in no way purports to limit the scope of relevant conduct from which the court could determine whether to apply a role-in-the-offense enhancement. Indeed, paragraph 11(c) actually lists "Defendant's role in the offense" as one of several possible sentencing factors that could be considered by the district court in determining a sentencing range, but it provides no stipulation as to an enhancement based on Noriega's role in the offense. Moreover, paragraph 14 expressly allowed the parties to "make whatever comment and evidentiary offer they deem appropriate at the time of sentencing and entry of plea, provided that such offer or comment does not violate any other provision of this Plea Agreement." Because the plea agreement contained no provision limiting the scope of relevant conduct or defining Noriega's role in the offense and because the Government unequivocally stood by its stipulation to a base offense level of 36, we conclude that the Government did not breach the plea agreement by introducing the additional evidence to establish Noriega's role under USSG § 3B1.1(a). *See United States v. Selvy*, 619 F.3d 945, 948, 950 (8th Cir. 2010) (holding that, where a "fair reading of the plea agreement reveal[ed] no language preventing the government from arguing for an increased sentence based on conduct prior to 2006," "the government did not breach the plea agreement" by "advocating for inclusion of uncharged drug trafficking activity dating back to September 1998 as relevant conduct").

Noriega suggests that this conclusion is inconsistent with *United States v. Lara*, 690 F.3d 1079 (8th Cir. 2012), and *United States v. DeWitt*, 366 F.3d 667 (8th Cir. 2004). Both *Lara* and *DeWitt* are distinguishable. In *Lara* and *DeWitt*, we held that the Government breached a plea agreement when it stipulated to a drug quantity and corresponding base offense level and then initiated an effort at the sentencing hearing to obtain a higher drug quantity and base offense level. *Lara*, 690 F.3d at 1081-83; *DeWitt*, 366 F.3d at 671-72. In this case, however, the Government made clear at sentencing that it intended to honor the stipulated base offense level of 36, which the district court adopted, and then sought a role-in-the-offense enhancement for which there was no such stipulation. This case is more analogous to *United States v. Leach*, 491 F.3d 858 (8th Cir. 2007), in which we rejected a *DeWitt*-based argument where the Government stipulated to a base offense level and later sought an enhancement under Chapter Four of the Guidelines. *Id.* at 863-65. The plea agreement in *Leach* contained a provision similar to paragraph 14, which provided that "[a]s to any other Guidelines issues, the parties are free to advocate their respective positions at sentencing." *Id.* We observed that, as here, the parties "only stipulated to [the defendant's] base offense level under Chapter Two of the Guidelines" and "did not address possible adjustments." *Id.* at 864. Therefore, as in *Leach*, we conclude that the Government did not breach the plea agreement as it was "free to advocate for the . . . enhancement because it was an issue that had not been agreed to or specifically listed in the agreement." *Id.*

For the foregoing reasons, we affirm the district court's interpretation of the plea agreement and its imposition of Noriega's sentence.[2]

---

[2]Noriega does not challenge the district court's actual application of the role enhancement under USSG § 3B1.1(a) based upon the evidence received at the sentencing hearing, nor does Noriega challenge the substantive reasonableness of his sentence. Thus, we do not address those issues. *See United States v. Brown*, 550 F.3d 724, 729 n. 4 (8th Cir. 2008).

BRIGHT, Circuit Judge, concurring.

I concur in the opinion of the Court. However, I write separately to express my concern that Rene Fernandez Noriega's 210-month sentence is excessive, and to reiterate, as the United States Attorney General stated just last year, that our sentencing system is broken and a new approach must be taken. *See United States v. Stokes*, 750 F.3d 767, 772-73 (8th Cir. 2014) (Bright, J., concurring); *United States v. Hiveley*, 61 F.3d 1358, 1363-66 (8th Cir. 1995) (Bright, J., concurring).

Noriega, a 50-year-old man, was convicted of a non-violent drug conspiracy offense and had no prior criminal history. He faced a mandatory minimum sentence of 10 years in prison and through enhancements under the Guidelines he received a sentence of 17.5 years (210 months). This is exactly the type of case that Attorney General Eric H. Holder, Jr., was referring to in his August 12, 2013 speech to the American Bar Association. *See* Eric Holder, Attorney General of the United States, United States Department of Justice, Remarks at the Annual Meeting of the American Bar Association's House of Delegates (Aug. 12, 2013), *available at* http://www.justice.gov/iso/opa/ag/speeches/2013/ag-speech-130812.html. As Attorney General Holder stated in his remarks, "[b]y reserving the most severe penalties for serious, high-level, or violent drug traffickers, we can better promote public safety, deterrence, and rehabilitation—while making our expenditures smarter and more productive." *Id.* Attorney General Holder has mandated that the Justice Department modify its charging policies to avoid "draconian mandatory minimum sentences" for nonviolent drug offenders. *Id.*

This mandate should be taken seriously. Until reforms come to the Guidelines and other sentencing provisions, those in the system—the probation officers, the U.S. Attorneys, defense counsel, and judges—must seek ways to correct this broken system and ensure that sentences are commensurate with the underlying crime. That

did not happen in this case and, as a result, Noriega has suffered a severe penalty that is unwarranted given his lack of a criminal history.

_____